**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

————————————

No. 93-5150
Summary Calendar
————————————

SIERRA CLUB, et al.,

Plaintiffs-Appellees,

VERSUS

MIKE ESPY,
in His Official Capacity
as Secretary of Agriculture, et al.,

Defendants,

TEXAS FORESTRY ASSOCIATION
and
SOUTHERN TIMBER PURCHASERS COUNCIL,

Movants-Appellants.

——————————————————

Appeal from the United States District Court
for the Eastern District of Texas
——————————————
March 31, 1994

Before GARWOOD, SMITH, and DeMOSS, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Texas Forestry Association ("TFA") and the Southern Timber Purchasers Council ("STPC"), two trade associations representing most of the purchasers of timber from the Texas national forests, appeal the district court's denial of their motion to intervene in this lawsuit between the Sierra Club and the Secretary of Agricul-

ture.  Concluding that movants satisfied the requirements of FED. R. CIV. P. 24(a) for intervention as a matter of right, we reverse.

## I.

Three environmentalist groups initiated a lawsuit in 1985 to challenge certain United States Forest Service practices for managing the four national forests in Texas.  The initial complaint alleged that the Forest Service's program for controlling the southern pine beetle was in violation of the Wilderness Act, 16 U.S.C. §§ 1131-1136, the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531-1543, and the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-4361.  The district court denied the requested relief but issued a preliminary injunction requiring the Forest Service to adhere to its own prescribed policies for controlling the pine beetle.  See Sierra Club v. Block, 614 F. Supp. 134, 135, 139-41 (E.D. Tex. 1985).

In 1987, the Forest Service issued the "Texas Forest Plan" (the "Plan") based upon an environmental impact statement ("EIS"). The plaintiffs amended their complaints to allege that the Plan violated the ESA, NEPA, and the National Forest Management Act ("NFMA"), 16 U.S.C. § 1600 et seq., in addition to their claims concerning the pine beetle. Because the plaintiffs' administrative appeals of the Plan were pending, the district court dismissed the Plan-related claims.  See Sierra Club v. Lyng, 694 F. Supp. 1256, 1259 (E.D. Tex. 1988).  The court entered a permanent injunction, however, with regard to ESA violations that were not related to the

2

Plan. See Sierra Club v. Lyng, 694 F. Supp. 1260 (E.D. Tex. 1988). This court affirmed the finding of ESA violations but vacated portions of the injunction to give the Forest Service the opportunity to formulate its own plan to comply with the ESA. See Sierra Club v. Yeutter, 926 F.2d 429 (5th Cir. 1991).

In 1990, one plaintiff, the Texas Committee on Natural Resources ("TCONR"), filed a third amended complaint to address pine beetle issues. In 1992, TCONR filed its fourth amended complaint, which included Plan-related claims, challenging the Plan and the Plan EIS. The magistrate judge recommended that the government's motion for summary judgment be granted and the plaintiffs' NFMA and NEPA claims be dismissed. On January 6, 1993, TCONR filed its objections to the magistrate judge's report and moved for an "urgent injunction" barring the Forest Service from proceeding with timber sales in various parts of the Texas national forests.

On May 12, 1993, the district court granted TCONR's motion, issuing a preliminary injunction against even-aged logging[1] and

---

[1] Even-aged management is one of two systems of forest management defined in a Forest Service regulation, 36 C.F.R. § 219.3 (1992). Even-aged management creates stands where trees of essentially the same age class grow together. Id. Even-aged stands can be produced naturally (e.g., by fires or insect infestations) or by timber harvesting methods that remove most of the stand in one cutting (e.g., clearcut, shelterwood, or seed tree cutting methods). Id. Although most of the tree cover is temporarily removed under the even-aged cutting method, NFMA allows timber harvesting only when the stand can be adequately restocked within five years after harvest. 16 U.S.C. § 1604(g)(3)(E)(ii); 36 C.F.R. § 219.27(c)(3).

Uneven-aged management, on the other hand, through single-tree and group selection, results in the growth of trees through a range of diameter or age classes, maintaining continuous high-forest cover. 36 C.F.R. § 219.3. Even-aged management mimics natural ecosystems, whereas widespread uneven-aged management in natural ecosystems has been called "ecologically unsound." Resources Ltd., Inc. v. Robertson, 789 F. Supp. 1529, 1539 (D. Mont. 1991), aff'd in part, rev'd in part, 8 F.3d 1394 (9th Cir. 1993).

rejecting the magistrate judge's conclusion that the Forest Service had complied with NFMA and NEPA on these timber sales. See Sierra Club v. Espy, 822 F. Supp. 356, 370 (E.D. Tex. 1993). On June 24, 1993, the Forest Service issued a letter advising prospective timber purchasers that, as a result of the injunction, it would refrain from offering not only the planned timber sales challenged by the plaintiffs but also any timber sales with even-aged regeneration cuts. This letter triggered TFA and STPC's motion to intervene on July 9, 1993, which was denied.

II.

Movants argue that the district court erred in refusing to allow their intervention as a matter of right under FED. R. CIV. P. 24(a). A party seeking to intervene as of right must satisfy four requirements: (1) The application must be timely; (2) the applicant must have an interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest; and (4) the applicant's interest must be inadequately represented by the existing parties to the suit. New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co., 732 F.2d 452, 463 (5th Cir.) (en banc) (quoting International Tank Terminals, Ltd. v. M/V Acadia Forest, 579 F.2d 964, 967 (5th Cir. 1978)), cert. denied, 469 U.S. 1019 (1984). If a party seeking to intervene fails to meet any one of those requirements, it cannot intervene as a matter

4

of right.  <u>Kneeland v. National Collegiate Athletic Ass'n</u>, 806 F.2d 1285, 1287 (5th Cir.), <u>cert. denied</u>, 484 U.S. 817 (1987).  TFA and STPC's right to intervene is a legal issue that we review <u>de novo</u>.  <u>Ceres Gulf v. Cooper</u>, 957 F.2d 1199, 1202 (5th Cir. 1992).[2]

A.

Movants argue that their motion to intervene was timely.  Determining the timeliness of a motion to intervene entails consideration of four factors:  (1) The length of time during which the would-be intervenor actually knew or reasonably should have known of its interest in the case before it petitioned for leave to intervene; (2) the extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as it knew or reasonably should have known of its interest in the case; (3) the extent of the prejudice that the would-be intervenor may suffer if intervention is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely.  <u>Stallworth v. Monsanto Co.</u>, 558 F.2d 257, 264-66 (5th Cir. 1977) (citations omitted).

The analysis is contextual; absolute measures of timeliness should be ignored.  <u>Id.</u> at 266 (citation omitted).  The requirement

---

[2] Although the timeliness of intervention is generally reviewed for abuse of discretion, <u>Jones v. Caddo Parish Sch. Bd.</u>, 735 F.2d 923, 926 (5th Cir. 1984) (en banc), where the district court makes no finding regarding timeliness, we review this factor <u>de novo</u>.  <u>Ceres Gulf</u>, 957 F.2d at 1202 n.8.  We agree with the movants that <u>League of United Latin Am. Citizens v. Clements</u>, 999 F.2d 831 (5th Cir. 1993) (en banc), <u>cert. denied</u>, 114 S. Ct. 878 (1994), is inapposite.  There the court denied intervention where the lack of timeliness was obvious.

5

of timeliness is not a tool of retribution to punish the tardy would-be intervenor, but rather a guard against prejudicing the original parties by the failure to apply sooner. McDonald v. E.J. Lavino Co., 430 F.2d 1065, 1074 (5th Cir. 1970) (citation omitted). Federal courts should allow intervention "where no one would be hurt and greater justice could be attained." Id. (citation omitted).

1.

The movants argue that the first factor supports intervention because they promptly moved for intervention once their interest in the case became apparent, i.e., after the preliminary injunction was issued on May 12, 1993. The lawsuit, although pending for eight years, did not raise the NFMA and NEPA claims with regard to the Plan until the fourth amended complaint was filed in May 1992. Even in 1992, movants argue, the TFA and STPC believed that their interests would not be adversely affected, given the magistrate judge's report recommending that the NFMA and NEPA claims be dismissed.

Not until the district court granted the preliminary injunction did the movants become aware that their interests in timber sales were affected. TFA and STPC moved to intervene within two months of the issuance of the preliminary injunction.

The plaintiffs contend that the movants should have become aware in 1987 of any interest they had concerning timber sales because the NFMA and NEPA claims were first raised in the second

amended complaint. The district court indicated that it would carry the NFMA and NEPA claims in January 1988, pending exhaustion of administrative remedies. Furthermore, TFA participated as amicus curiae in the 1989 appeal of the decision concerning even-aged management under the ESA. Plaintiffs conclude that the NFMA and NEPA claims have been present for six years and that the movants' interest in these issues has remained unchanged during that time.

Having reviewed the January 1988 district court opinion, we conclude that the status of the NFMA and NEPA claims changed dramatically over the course of the lawsuit. In its January 1988 opinion, the district court dismissed TCONR's claim relating to the land and resource management plan. See Sierra Club v. Lynq, 694 F. Supp. 1256, 1259 (E.D. Tex. 1988). Furthermore, the district court denied Sierra Club's motion to amend its complaint to allege noncompliance with NFMA, pending exhaustion of administrative remedies. Id. at 1260. Therefore, TFA and STPC had reason to believe that their interests were not adversely affected at that stage.

In Stallworth, 558 F.2d at 264, we rejected the notion that the date on which the would-be intervenor became aware of the pendency of the action should be used to determine whether it acted promptly. Courts should discourage premature intervention that wastes judicial resources. Id. at 265. A better gauge of promptness is the speed with which the would-be intervenor acted when it became aware that its interests would no longer be

7

protected by the original parties.  Id. at 264.

In this case, the movants legitimately believed that the Forest Service would defend its timber sales and planning.  When the agency announced on June 24, 1993, that it would apply the preliminary injunction to all timber sales (not merely the nine sales challenged by the plaintiffs), movants became aware that the Forest Service would not protect their interests.  Therefore, we conclude that the first factor )) the length of time during which the would-be intervenor actually knew or reasonably should have known of its interest in the case before it petitioned for leave to intervene )) weighs in favor of the movants.


2.

The second factor )) the extent of prejudice to the existing parties as a result of the applicant's delay in seeking intervention )) also weighs in favor of TFA and STPC.  Plaintiffs argue that TFA and STPC's participation in the proceedings would "severely protract the litigation."  But prejudice must be measured by the delay in seeking intervention, not the inconvenience to the existing parties of allowing the intervenor to participate in the litigation.  Id. at 265.  The movants sought intervention less than three weeks after the Forest Service issued its June 24, 1993, letter.  We therefore conclude that no prejudice to the existing parties resulted from the delay in seeking intervention.[3]

---

[3] Moreover, as movants admit, no prejudice can come from renewed discovery or pretrial proceedings, because an intervenor "must accept the

(continued...)

The third factor is the extent of the prejudice the would-be intervenor would suffer if its petition for leave to intervene were denied. Movants argue that the preliminary injunction substantially reduced the acreage available for timber production and foreclosed the agency from offering any more timber sales with even-aged management regeneration cuts in the Texas national forests. The movants' member companies purchase and process timber offered from these forests and have property interests in existing sales contracts.

Plaintiffs claim that TFA and STPC are not prejudiced by denial of intervention because they already have intervened in the Forest Service's appeal of the preliminary injunction, and through that appeal movants could argue for their interpretation of NFMA and NEPA. Furthermore, since the movants participated in the development of the Forest Service's land management plan, they can continue to influence the timber industry. Finally, plaintiffs assert that no sales contracts are affected, and movants have failed to show how reduction of acreage adversely affects their interest.

The intervention in the appeal of the district court's preliminary injunction cannot adequately substitute for intervention at the district court level, as many more issues are at stake in the district court than the single issue now on appeal.

_____

(...continued)
proceedings as he finds them." In re Geisser, 554 F.2d 698, 705 n.6 (5th Cir. 1977). The intervenor has no right to relitigate issues already decided. Id.

The claim that the movants' interests are adequately represented by their participation in the development of the Forest Service's land management ignores the legal rights associated with formal intervention, namely the briefing of issues, presentation of evidence, and ability to appeal.

Finally, it is obvious that the economic interests of the movants are at stake. The movants have a financial interest in the ability to use the less expensive even-aged harvesting methods, and they have prospect of injury if the Forest Service cannot deliver constant volumes of timber. Furthermore, the district court's holding that NFMA bars even-aged management could injure movants' member companies in other venues.

4.

The final factor in determining timeliness of the intervention is the existence of unusual circumstances militating either for or against a determination that the application is timely. We are aware of no such specific circumstances pertinent to this case. In summary, based upon the brief time that had elapsed between the Forest Service's June 24, 1993, letter and the motion for intervention, the remoteness of prejudice to the existing parties resulting from this delay, and the likelihood of prejudice to the movants if intervention were denied, we conclude that the motion to intervene was timely.

B.

The second requirement for intervention as a matter of right under rule 24(a) is that the applicant have an "interest" in the subject matter of the action. This interest must be "direct, substantial, [and] legally protectable." Piambino v. Bailey, 610 F.2d 1306, 1321 (5th Cir.) (citations omitted), cert. denied, 449 U.S. 1011 (1980). Plaintiffs claim that the movants' interest is too speculative and generalized to satisfy rule 24. We disagree.

Movants represent the forest products industry, including the major purchasers and processors of Texas national forest timber. These member companies have legally protectable property interests in existing timber contracts that are threatened by the potential bar on even-aged management. Since "the `interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process," Ceres Gulf, 957 F.2d at 1203 n.10 (citation omitted), we conclude that movants had an interest sufficient to satisfy rule 24.

C.

The third requirement of rule 24(a) is that the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect his interest. Plaintiffs argue that adverse stare decisis effects will not supply the requisite disadvantage to satisfy this test. As we

11

have stated in <u>Ceres Gulf</u>, <u>id.</u> at 1204, however, an intervenor's interest "is impaired by the <u>stare decisis</u> effect of the district court's judgment." The issue of whether the NFMA bars even-aged logging affects the movants and, because of the precedential effect of the district court's decision, an adverse resolution of the action would impair their ability to protect their interest.

D.

The final requirement for intervention as a matter of right is that the applicant's interest must be inadequately represented by the existing parties to the suit. The applicant has the burden of demonstrating inadequate representation, but this burden is "minimal." <u>Trbovich v. United Mine Workers</u>, 404 U.S. 528, 538 n.10 (1972). The applicant need only show that representation "may be" inadequate. <u>Id.</u>

Plaintiffs contend that the government adequately represents the movants' interest because the interests are essentially identical. We cannot agree with this position. The movants have demonstrated, through the June 24, 1993, letter applying the district court's preliminary injunction to all future timber sales, that the government's representation of their interest is inadequate. The government must represent the broad public interest, not just the economic concerns of the timber industry. Given the minimal burden on the movants to satisfy this requirement, we conclude that the government's representation of the intervenors' interest is inadequate.

12

E.

Applying the four requirements of rule 24(a), we must conclude that the movants were entitled to intervene as a matter of right. Their motion was timely and indicated a legitimate interest in the subject matter. Moreover, failure to allow intervention would impair TFA and STPC's ability to protect their interest because of the precedential effect of the district court's decisions. We also agree with the movants that the government's representation of their interest is inadequate.

III.

Because we conclude that the district court, in spite of its diligent and evenhanded effort to manage this difficult and complex case, erred in denying rule 24(a)(2) intervention, we need not reach the issue of permissive intervention. The order denying intervention is REVERSED.

Judge Garwood notes his dissent.

13