BECKER, Chief Judge,
Concurring.
Although I believe the question to be close as to the intervention of Brookville Wood Products, Inc. and Northeast Hardwoods, I agree with the majority that the district court should have granted the request of the appellants to intervene as of right, hence I concur in the judgment. I fear, however, that the majority’s analytic framework departs from the doctrinal view that this Court has taken of Rule 24(a)(2), will create mischief in this area, and will open intervention as of right to an amorphous “I know it when I see it” approach. I therefore write separately to set forth my view of the correct governing principles.
I.
Contemporary litigation—particularly environmental litigation—frequently affects numerous individuals, groups, communities, and business interests, including those not originally made party to the litigation. The question often arises, as in this case, whether any of these outsiders has a right to intervene and to be made a party to the case. Plaintiffs have requested an injunction halting all *975 logging activities in the Allegheny National Forest (“ANF”), canceling all existing contracts for logging in the Forest, and preventing the United States Forest Service from entering into new contracts. The Forest Service is a party to contracts with certain logging companies and, if not prevented by the present litigation, would enter into contracts with other companies for logging in the ANF. The proceeds from these contracts redound not only to the benefit of the federal government, but also, pursuant to federal and' state law, to the benefit of the local school districts and municipalities in which the ANF is located. Should the requested injunction issue, not only will logging jobs be lost and municipal tax revenues from workers’ incomes and company profits be reduced, but negative economic effects also would be felt by logging supply companies and even by other local businesses (food establishments, real estate developers, etc.). The issue before us is whether the district court erred when it concluded that, of all of these individuals and groups, only two logging companies with existing contracts with the Forest Service met the requirements for intervention as of right pursuant to Rule 24(a)(2).[1]
Federal Rule of Civil Procedure 24(a)(2) provides that:
(a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant’s ability to protect that interest, unless the applicant’s interest is adequately represented by existing parties.
As the majority notes, we have required proof of four elements for intervention under Rule 24(a)(2): (1) a timely application; (2) sufficient interest in the litigation; (3) which might be impaired, as a practical matter, by disposition of the action; and (4) inadequate representation of t he applicant’s interest by existing parties to the litigation. See Mountain Top Condo. Ass’n v. Dave Stabbert Master Builder, Inc., 72 F.3d 361, 365-66 (3d Cir.1995). A district court’s denial of intervention as of right will be reversed only if the court has abused its discretion by applying the wrong legal standard or reaching a conclusion we are confident is incorrect. See Harris v. Pernsley, 820 F.2d 592, 597 (3d Cir.1987).
One prominent source has suggested that the inquiry under Rule 24(a)(2) must be “flexible,” with a “balancing and blending” of the individual elements, and that “[t]he criteria should be considered together rather than discretely.” 6 James Wm. Moore, Moore’s Federal Practice § 24.03[l][b] (3d ed.1998). The majority appears to adopt such a “flexible” and “blending” approach to Rule 24(a)(2), endorsing what it sees as the Rule’s “elasticity,” Maj. Op. at 970, and calling for “pragmatic considerations” when evaluating a petition for intervention. Maj. Op. at 971. I acknowledge, with my colleagues in the majority, that “pragmatic considerations such as the benefits derived from consolidation of disputes into one proceeding,” id., are relevant in the Rule 24(a)(2) analysis, and that excessive rigidity is neither desirable nor likely what the rulemakers intended in adopting the amended Rule 24 in 1966. I fear, however, that the majority has taken the pragmatism that the 1966 amendments introduced to Rule 24 too far — well past the intentions of the Rule’s framers, and past any recognizable standard to guide trial courts when faced, as they frequently are, with petitions for intervention by parties with varying degrees of interest in the litigation before the court. I also am concerned that this “blending” approach opens the intervention door to parties with a minor interest or a small likelihood of impairment — as long as they can make up for the shortfall in one element with strength in another. More importantly, I do not believe that the text of the Rule will support the majority’s gloss.
II.
The most difficult question in many intervention cases, and I believe in this one as well, is the nature of the proposed interve- *976 nors’ interest and whether this interest is sufficient to meet the requirements of Rule 24(a)(2).[2] The starting point for this analysis must be Donaldson v. United States, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971). In Donaldson, the Supreme Court held that the interest under Rule 24(a)(2) must be one that is “significantly protectable.” Id. at 531, 91 S.Ct. 534. Although the Supreme Court has failed to provide further guidance as to the meaning of this phrase, we have decided a number of cases in which the nature of the necessary interest has been explored. In my opinion, the majority errs in viewing these precedents as creating a “nebulous” standard. Maj. Op. at 969.
In Harris, supra, we said that a would-be intervenor “must demonstrate that there is a tangible threat to a legally cognizable interest.” Harris, 820 F.2d at 601. In Mountain Top, supra, we held that “a mere economic interest” is insufficient. 72 F.3d at 366. While these cases do not give us a bright-line standard, they do flesh out the contours of the doctrine. They reduce the analysis to a two-part inquiry, i.e., we must examine (1) the reality of the interest — does the litigation pose a “tangible threat" to the applicant or simply a speculative one? — and (2) the nature of the interest, e.g., is it a “mere economic interest”? We have found an interest insufficient when a party’s status was simply “would-be purchaser” of collateral, see Old Colony Trust Co. v. Penrose Indus. Corp., 387 F.2d 939, 941 (3d Cir.1968), or when a district attorney’s ability to prosecute cases would not be directly affected by a prison consent decree, see Harris, 820 F.2d at 599-603. In contrast, we have found a sufficient interest when a proposed consent decree directly impinged on an existing contractual right, see EEOC v. AT & T, 506 F.2d 735, 741-42 (3d Cir.1974), or on a statutory right of contribution, see United States v. Alcan Aluminum, Inc., 25 F.3d 1174, 1183-86 (3d Cir.1994). As these cases demonstrate, when the interest at issue is both real and legally cognizable (through contract, statute, or a property right), we have found it to meet the requirements of Rule 24(a)(2) and Donaldson. See also Brody v. Spang, 957 F.2d 1108, 1117 (3d Cir.1992) (finding an interest sufficient when a consent decree altered “legal rights and responsibilities of the applicants for intervention”).
Other courts have distinguished interests sufficient under Rule 24(a)(2) from those not sufficient for intervention as of right in a similar manner. In Scotts Valley Band of Porno Indians v. United States, Indian bands brought suit against the federal government to restore the trust status of certain land. See 921 F.2d 924 (9th Cir.1990). The Ninth Circuit concluded that the City of Chico had an interest sufficient for intervention because the litigation could result in the removal of certain property from the city’s tax rolls and from under its regulatory purview. See id. at 927-28. In contrast, the Second Circuit found the interest of proposed intervenors to be too speculative in a case in which plaintiffs sought to force the Environmental Protection Agency to promulgate new air quality standards. See American Lung Ass’n v. Reilly, 962 F.2d 258 (2d Cir.1992). There, although the proposed intervenors, electric utilities and trade associations, had an interest in the regulations themselves, the plaintiffs did not seek to enjoin any activities in which the utilities had a direct interest and therefore the utilities had no legally cognizable interest that would be altered by the litigation itself. See id. at 261.
In similar situations, other courts have found a sufficient interest for intervention because the proposed intervenors would be directly affected by the litigation seeking changes in federal agency rulemaking. See, e.g., Sierra Club v. Glickman, 82 F.3d 106, 109 (5th Cir.1996) (farm group had sufficient interest in suit which sought to prevent government agency from expending funds to, or fulfilling contracts with, farmers); Sierra Club v. Espy, 18 F.3d 1202, 1207 (5th Cir.1994) (timber purchasing companies with existing contracts had legally cognizable interest sufficient to intervene in challenge by environmental groups to Forest Service policies regarding logging procedures); Sierra Club v. United States Envtl. Protection Agency, 995 F.2d 1478, 1482 (9th Cir.1993) [U.S. EPA ] (relief sought by plaintiffs would *977 directly impinge on intervenor-city’s existing permit rights under Clean Water Act); Conservation Law Found. v. Mosbacher, 966 F.2d 39, 43 (1st Cir.1992) (Weis, J.) (consent decree requiring promulgation of new fishing plan would directly affect intervening fishing groups because it would require not only a new plan but specifically a plan to reduce overfishing).[3]
III.
I turn to applying the foregoing analytic framework (and case law) to the parties seeking intervention in this case. While my approach differs from the majority’s, it leads to the same conclusion, that all potential inter-venors have a sufficient interest for intervention as of right. Two proposed intervenors, Payne Forest Products, Inc. and Spilka Wood Products Company, have existing contracts with the Forest Service which could be suspended or canceled as a result of the present litigation. There can be no doubt that interference with existing contractual rights constitutes the necessary “tangible threat to a legally cognizable interest” that we have required for intervention as of right. Allegheny Hardwood, the trade association, also represents lumber companies with existing contracts, see Dist. Ct. Op. at 6, and therefore, as a representative of these companies, has a legally cognizable interest which will be directly affected by the present litigation. See, e.g., Espy, 18 F.3d at 1207 (existing timber contracts of member companies give trade association “legally protecta-ble property interests” necessary to satisfy intervention as of right).
Ridgway Lumber Company, while without an existing lumber contract, had successfully bid on one and would have entered into a contract with the Forest Service absent the present litigation. Its successful bid is a tangible interest which could be — indeed, has been — directly affected by the present litigation, whatever its eventual outcome. See, e.g., Forest Conservation Council v. United States Forest Serv., 66 F.3d 1489, 1494 (9th Cir.1995) (when suit has “direct, immediate, and harmful effects” on third party’s legally protectable interests, this satisfies the “interest” prong of Rule 24(a)(2)).
A more difficult case is presented with respect to proposed intervenors Brookville Wood Products, Inc. and Northeast Hardwoods. Neither of these companies has an existing contract for cutting timber in the ANF, nor have they successfully bid on a contract which would have been consummated but for the present litigation. However, the district court found that these companies “generate the majority of their revenues from timber contracts with the [Forest Service] to cut timber in the Allegheny National Forest” and that they “are very dependent on[these] timber contracts.” Dist. Ct. Op. at 5. I understand this finding, in light of the record, to mean that these companies have consistently been successful bidders in ANF logging contracts, that it is only an accident of timing that they do not have contracts at this juncture, and that — particularly given the remoteness of the area in which the companies operate — they are very likely to secure contracts in the near future if logging contracts are there to be bid (which will depend on the outcome of this litigation). In evaluating the interest of the companies without existing contracts, it is apparent that it is not an “actual” interest, but neither is it speculative. Under these circumstances, I cannot say that the majority is wrong when it finds that these companies also have the sufficient interest to meet our requirements for intervention as of right.
*978 Finally, the government intervenors have an actual, direct interest in this litigation by virtue of their statutory right to a portion of the proceeds from contracts between logging companies and the Forest Service. The local governments are effectively limited partners with the named defendant in this case, having no control over the formation of the logging contracts but a vested right to a portion of the proceeds therefrom. Without this piggybacking on the named defendants, I would question whether the municipalities have a sufficient interest to intervene, solely based on their loss of revenue from reduced tax receipts. The majority is not clear about this distinction, emphasizing the “limited tax bases,” Maj. Op. at 973, of the municipalities in question. In my view, it is only the statutory right to logging proceeds that gives the municipalities here a sufficient interest to intervene and to protect that interest from interference that could arise from this litigation.
IV.
As noted above, the majority does not clearly draw the line between interests sufficient for intervention under Rule 24(a)(2) and those not sufficient. To better illustrate where I believe this line is drawn, I consider the proposed intervention of hypothetical parties to the present case. The logging companies to whom we grant intervention today purchase supplies from other companies for the products they need to carry out their timber-cutting business. If the logging companies’ contracts with the Forest Service are suspended or canceled, the supply companies could suffer a loss of business as the logging companies no longer need purchase supplies for timber-cutting. In addition, the logging companies employ workers who use their wages to purchase products and services in local establishments, such as gas stations, grocery stores, etc. Assume one of these establishments is a diner frequented by logging company employees. When the logging companies’ contracts with the Forest Service are disrupted by this litigation, these employees may be laid off or their wages reduced. With less income, they might gather at the diner with less frequency. The diner clearly will suffer an economic harm, formally (if not directly) caused by the present litigation. The same would be true of local municipalities if they did not have the statutory right to a portion of the logging contract proceeds; they too would suffer an economic harm caused indirectly by the present litigation.
If the logging supply companies or the local diner were to petition for intervention as of right, should the district court find their interest sufficient to warrant intervention under Rule 24(a)(2)? I believe the majority’s “elastic” approach at once gives the district court little guidance in answering this question, and gives it license to do whatever it wants. In contrast, I think it is clear that neither the Rule nor our prior jurisprudence in this area would permit the supply company or the diner to intervene as of right. While both of these businesses likely will suffer an economic harm from the litigation, in terms of both the nature and the reality of the interest, this harm is both too contingent and too remote from the litigation itself to be a legally cognizable interest sufficient for intervention under Rule 24(a)(2). See, e.g., City of Stilwell v. Ozarks Rural Elec. Coop. Corp., 79 F.3d 1038, 1042 (10th Cir.1996) (supplier of electrical power to defendant had insufficient interest for intervention even though it would “benefit financially if[defendant] is allowed to continue to service its customers”).
Unlike the logging companies and the local governments, which suffer an immediate, direct harm when the logging contracts are suspended — even if they somehow can replace their canceled contracts or lost revenue from some other source — the diner and supply company suffer any loss only down the line, after the logging companies have reduced their workers’ wages or stopped ordering logging supplies. See, e.g., Montana v. United States Envtl. Protection Agency, 137 F.3d 1135, 1142 (9th Cir.1998) (potential effect on property values from promulgation of new water quality standards is “a speculative and purely economic interest [which] does not create a protectable interest in litigation concerning a statute that regulates environmental, not economic, interests”). Further, such losses that the diner or supply company may suffer are not grounded in a legal *979 right — contractual, property, or statutory— which is related to the litigation at hand. See, e.g., Forest Conservation Council v. United States Forest Serv., 66 F.3d 1489, 1496-97 (9th Cir.1995) (only “tangible, concrete rights protected by” statute or contract constitute a sufficient interest under Rule 24(a)(2); purely economic injuries, pecuniary losses, or frustrated financial expectations are not sufficient interests).[4]
In a different context — the interpretation of the nation’s antitrust laws — the Supreme Court has distinguished between parties injured by direct actions of an antitrust violator and those injured down the line (i.e., purchasers from the directly injured parties). See Illinois Brick Co. v. Illinois, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977). In Illinois Brick, the Court reasoned that “allowing indirect purchasers to recover using pass-on theories ... would transform treble-damages actions into massive multiparty liti-gations involving many levels of distribution and including large classes of ultimate consumers remote from the defendant.” Id. at 740, 97 S.Ct. 2061. Despite Rule 24’s pragmatic underpinnings, the concern the Court expressed in Illinois Brick is instructive in the present context. Environmental litigation of the present type could potentially involve multiple layers of plaintiffs and defendants. The indirect effects from the alleged wrongdoing by the federal agency, as well as the collateral effects from the litigation itself, touch the lives of residents of the communities near the forests, visitors to the area, local businesses, municipalities and school districts, logging companies and their employees and suppliers, consumers of wood and paper products, transportation companies which have contracts to move the timber to mills, and so on. As in Illinois Brick, some line must be drawn lest these environmental cases (and other public law eases) become “massive multiparty litigations.” We can — and should — draw this line without sacrificing the pragmatism of Rule 24.
V.
Once we have established that a party has a sufficient interest for intervention as of right, we must determine whether “the disposition of the action may as a practical matter impair or impede the applicant’s ability to protect that interest.” Fed.R.Civ.P. 24(a)(2). I note again that the majority fails to treat the interest prong and the impairment prong as separate requirements. The Rule, however, requires both a sufficient interest and that this interest might be impaired by disposition of the action in the party’s absence. Therefore, I believe that the analysis, while remaining flexible and pragmatic, must be performed in such a manner as to ensure that intervention as of right is granted only to those parties meeting both requirements.
In the present ease, it is clear that this litigation itself could practically impair the interests of all of the proposed intervenors if the district court were to grant the injunctive relief sought by the plaintiffs pending a decision on the underlying dispute. See Appel-lees’ Brief at 3 (“[T]he initial result of success in the litigation below will be a pause in timber cutting with regard to the two projects and in other areas of the [ANF]_”). The logging companies’ interest is in contracts to cut timber, either existing or certain to be entered into in the near future (absent the litigation). An injunction that suspends, cancels, or prevents future contracting by the Forest Service will directly and immediately affect this interest.[5] Similarly, the local governments would immediately lose the income to which they are entitled from these contracts.
*980 The only hope of preventing impairment would be if the proposed intervenors filed their own suit and argued that the Forest Service has acted in compliance with the relevant statutes and that, therefore, no injunction should issue. However, a contrary determination in the present case would have a stare decisis effect on this potential future litigation, leaving the proposed intervenors without legal recourse to protect their interests. AlS we said in Brody, supra, the practical impairment prong is satisfied if a judgment
will have a significant stare decisis effect on [applicants’] claims, or if the applicants’ rights may be affected by a proposed remedy.
An applicant need not, however, prove that he or she would be barred from bringing a later action or that intervention constitutes the only possible avenue of relief. The possibility of a subsequent collateral attack does not preclude an applicant from demonstrating that his or her interests would be impaired should intervention be denied.
957 F.2d at 1123 (citations omitted). All of the proposed intervenors meet this requirement in the present case.[6]
VI.
In sum, I believe that an increasingly clear, inflexible, standard has developed in our Rule 24(a)(2) case law, which we should adhere to in this case and in future intervention situations, and which requires a searching analysis of each of the elements required for intervention as of right. I also believe that this jurisprudence, while not necessarily followed in the majority opinion, leads to the same result. I therefore concur in the judgment granting intervention to all of the proposed intervenors.

. Because I conclude that the appellants are entitled to intervention as of right under Rule 24(a)(2), I agree with the majority that we need ned reach the question of whether they are entitled to permissive intervention under Rule 24(b)(2).

. Like the majority, I do not discuss the timeliness requirement, as no party to this appeal contests the timeliness of the proposed interve-nors’ petition.

. I note that, while I agree with the majority that it would be inappropriate to adopt a categorical rule that non-governmental bodies cannot intervene in NEPA cases, I believe that the Ninth Circuit has clarified its holding in Portland Audubon that "governmental bodies charged with compliance can be the only defendants” in a NEPA action. Portland Audubon Soc'y v. Hodel, 866 F.2d 302, 309 (9th Cir.1989) (internal quotations omitted). In U.S. EPA, supra, as well as in more recent cases, the Ninth Circuit has explained its holding in Portland Audubon as simply requiring that the intervenor have some interest protected by statute, contract, or property rights other than the statutory scheme of NEPA itself, which by its terms only applies to the federal government. U.S. EPA, 995 F.2d at 1483-84. In Portland Audubon, the proposed intervenors' interest "appears to have been an economic interest based upon a bare expectation, not anything in the nature of real or personal property, contracts, or permits.” U.S. EPA, 995 F.2d at 1482; see also id. at 1485 ("The loggers in Portland Audubon had an interest in securing timber, but no existing legal right to it ....” (emphasis added)).

. The same analysis holds for municipalities without a piggyback right who may suffer losses when the citizens (lumber company employees) or businesses (logging companies, supply companies, local establishments) within their communities have less income and pay fewer taxes. Unlike the actual municipalities and school districts at issue here, local governments without a direct statutory right to a share of the proceeds from logging contracts have neither the tangible interest'nor the direct link to the litigation necessary for intervention under Rule 24(a)(2).

. This is not a case like ManaSota-88, Inc. v. Tidwell, 896 F.2d 1318 (11th Cir.1990), in which proposed intervenors could not point to any direct effect from the relief sought by plaintiff-environmental groups — the promulgation of new regulations by a federal agency — as it was "purely a matter of speculation” whether the proposed intervenors would be in violation of any new regulations, thereby increasing their costs of compliance. Id. at 1322.

. I agree with the majority that the Service’s interests do not necessarily coincide with the logging companies and that, given the minimal standard for finding that an applicant’s interests are not adequately represented, see Trbovich v. United Mine Workers, 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972), all of the logging companies — and the local governments-— meet this final requirement for intervention.