BOLIN, Justice.
QBE Insurance Corporation appeals from the trial court’s denial of its motion for permissive intervention. We affirm.

Facts and Procedural History

On July 28, 2006, The Mobile Press Register, Inc. (“MPR”), a regional newspaper company, sued eight subcontractors and vendors involved in the design and construction of its new office and printing facility in Mobile. The complaint named Structural Masonry, Inc., as one of the defendants. Structural Masonry constructed both the concrete masonry unit walls of the building and the brick-veneer exterior. MPR asserted claims against Structural Masonry alleging negligence, wantonness, breach of warranty, misrepresentation, and suppression. Structural Masonry had a commercial general-liability insurance policy with QBE, and, pursuant to the policy, it notified QBE of the pending lawsuit against it. On October 10, 2006, MPR filed its first amended complaint, adding as defendants six subcontractors and vendors.
On November 9, 2006, QBE advised Structural Masonry that it was “reserving its right to question its duties in the future and/or deny any further duties under the Polic[y] and/or request that a court determine those duties, if any, in an action seeking a declaratory judgment regarding the obligations and rights of the parties under the Polie[y].” In its letter reserving its rights under the policy, QBE stated that coverage may be barred because of the applicability of various exclusions within the policy and/or because the damage did not occur within the effective term of the policy. One of the provisions in the policy excludes from coverage damage to any part of the property that must be repaired or replaced because work was “incorrectly performed” by Structural Masonry. Subsequently, QBE provided Structural Masonry with defense counsel.
On February 8, 2007, MPR submitted a report by an engineering expert, which details the damage to the building, including the cost to replace Structural Masonry’s allegedly defective work. QBE received a copy of the report. On April 13, 2007, MPR filed its second amended complaint, adding the general contractor, The Austin Company, Inc. (“Austin”), as a defendant. On April 25, 2007, QBE sent Structural Masonry a second reservation-of-rights letter, again placing Structural Masonry on notice that QBE was reserving its rights to deny coverage under the policy.
On July 9, 2007, Austin filed a cross-claim against several of the subcontractors and vendors, including Structural Masonry. On July 24, 2007, QBE sent Structural Masonry a third reservation-of-rights letter. On January 7, 2008, Austin filed a third-party complaint against Thompson Engineering, Inc., arising out its contract with Austin to provide testing and inspection services during the construction of the building.
On March 3, 2008, QBE filed a motion for permissive intervention, pursuant to Rule 24(b), Ala. R. Civ. P. In its motion, *1130 QBE sought to intervene in MPR’s action for the purposes of participating in discovery, requesting interrogatories and/or special-verdict forms to be presented to the jury in order to determine the basis of the jury’s verdict for insurance-coverage purposes, and clarifying, in any way necessary, coverage issues related to the damages that may ultimately be awarded. QBE stated in its motion that Structural Masonry’s commercial general-liability insurance policy would provide coverage only for damage resulting from Structural Masonry’s allegedly defective construction, e.g., water intrusion, but would not provide coverage for repairing or replacing that defective construction. QBE also stated that the policy provided coverage for only a portion of the period at issue. QBE argued that in the event the jury returned a general verdict, QBE would not be able to determine what portion of the verdict is attributable to damage possibly covered by the policy and what portion of the verdict is attributable to damage that occurred during the policy period.
On March 4, 2008, the trial court set the motion for a hearing on April 4, 2008. On March 24, 2008, another insurance company, Penn National Insurance Company, filed a motion to intervene. Penn National also insured Structural Masonry. On March 27, 2008, Austin filed a motion objecting to QBE’s and Penn National’s motions to intervene, arguing that allowing either insurance company to intervene would prejudice Austin and introduce into the case the issue of the existence of liability-insurance coverage. Austin also stated that the insurance companies had an adequate remedy to protect their interests through a separate declaratory-judgment action determining coverage under their respective policies.
On April 2, 2008, two days before the scheduled hearing, the trial court denied both QBE’s and Penn National’s motions to intervene. On May 14, 2008, QBE filed its notice of appeal. Penn National appealed, but on August 28, 2008, this Court dismissed the appeal (no. 1071176) as untimely.

Standard of Review

In Universal Underwriters Insurance Co. v. Anglen, 630 So.2d 441, 443 (Ala.1993), this Court set out the applicable standard for reviewing the denial of a motion for permissive intervention under Rule 24(b), Ala. R. Civ. P.:
“The standard of review for a denial of a motion for permissive intervention is whether the trial court abused its discretion. Universal [Underwriters, Ins. Co. v. East Central Alabama Ford-Mercury, Inc., 574 So.2d 716, 723 (Ala.1990) ]. See also, New Orleans Public Service, Inc. v. United Gas Pipe Line Co., 732 F.2d 452, 470-71 (5th Cir.1984) (‘when we are asked to review a denial of permissive intervention, the question on appeal is not whether “the factors which render permissive intervention appropriate under Federal Rule of Civil Procedure 24(b) where present,” but is rather “whether the trial court committed a clear abuse of discretion in denying the motion” ’). Again, we see no reason to depart from the Federal courts’ interpretation of the corresponding Federal rule.”

Discussion

The issue thus is whether the trial court exceeded its discretion in denying QBE’s motion for permissive intervention. We note that all the parties to this appeal recognize that an insurer has no absolute right to intervene in an action against its insured. Universal Underwriters Ins. Co. v. East Central Alabama Ford-Mercury, Inc., 574 So.2d 716 (Ala.1990). In Univer *1131 sal, the insurer sought to intervene in an action brought against its insured for the limited purpose of presenting the trial court with either special-verdict forms or special interrogatories to be given to the jury at the close of the trial. The trial court denied the insurer’s motion, and the insurer appealed. This Court held that the insurer did not have a direct, substantial, and legally protectible interest allowing it to intervene as a matter of right as provided in Rule 24(a), Ala. R. Civ. P. We recognized that permissive intervention under Rule 24(b) is within the broad discretion of the trial court, and we affirmed the trial court’s denial of the insurer’s motion to intervene.[1]
Rule 24(b), Ala. R. Civ. P., provides that on a timely motion the court may permit anyone to intervene when a statute confers a conditional right to intervene or when an applicant’s claim or defense and the main action share a common question of law or fact. Rule 24(b) goes on to provide that “[i]n exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.”
The first requirement is that a motion for permissive intervention be timely filed. Whether such a motion is timely is a determination within the discretion of the trial court.
“Since [Rule 24, Ala. R. Civ. P.], itself, is silent concerning what constitutes a ‘timely application,’ it has long been held that the determination of timeliness is a matter committed to the sound discretion of the trial court. See Strousse v. Strousse, 56 Ala.App. 436, 322 So.2d 726 (1975). See also McDonald v. E.J. La-vino Co., 430 F.2d 1065, 1072 (5th Cir.1970). Because the pressure to allow intervention ‘of right’ under Rule 24(a) is by its very nature more compelling than is permissive intervention, most courts tend to require less rigidity in evaluation of timeliness under Rule 24(a). See Diaz v. Southern Drilling Corp., 427 F.2d 1118 (5th Cir.), cert. denied, 400 U.S. 878, 91 S.Ct. 118, 27 L.Ed.2d 115 (1970), rehearing denied, 400 U.S. 1025, 91 S.Ct. 580, 27 L.Ed.2d 638 (1971). See generally, [Charles Alan Wright et al., Federal Practice & Procedure ] § 1916 [ (2d ed. 1986) ]. As expressed in McDonald, 430 F.2d at 1073: ‘Since in situations where intervention is as of right, the would-be inter-venor may be seriously harmed if he is not permitted to intervene, courts should be reluctant to dismiss such a request for intervention as untimely, even though they might deny the request if the intervention were merely permissive.’ ”
Randolph County v. Thompson, 502 So.2d 357, 364 (Ala.1987). In other words, trial courts have broader discretion in denying a motion for permissive intervention as untimely under Rule 24(b) than they do in denying as untimely a motion to intervene as of right under Rule 24(a).
Several United States Courts of Appeals have set out factors to use in assessing the timeliness of a motion to intervene filed under Rule 24, Fed.R.Civ.P. See, e.g., Shea v. Angulo, 19 F.3d 343, 348-49 (7th Cir.1994); United States v. Jefferson County, 720 F.2d 1511, 1516 (11th Cir.1983); and Stallworth v. Monsanto Co., 558 F.2d 257, 264-67 (5th *1132 Cir.1977). “Cases interpreting the Federal Rules of Civil Procedure can be persuasive authority in construing the Alabama Rules of Civil Procedure because of the similarities between the Alabama rules and federal rules.” Pontius v. State Farm Mut. Auto. Ins. Co., 915 So.2d 557, 561 n. 3 (Ala.2005). The court must consider the totality of the circumstances in determining whether the motion for intervention is timely and not merely the point to which the action has progressed at the time the motion is filed. NAACP v. New York, 413 U.S. 345, 365-66, 93 S.Ct. 2591, 37 L.Ed.2d 648 (1973). In United States v. Jefferson County, the United States Court of Appeals for the Eleventh Circuit set out the factors as follows:
“(1) [T]he length of time during which the would-be intervenor knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene; (2) the extent of prejudice to the existing parties as a result of the would-be intervenor’s failure to apply as soon as he knew or reasonably should have known of his interest; (3) the extent of prejudice to the would-be inter-venor if his petition is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely. Stallworth [v. Monsanto Co., 558 F.2d 257, 264-66 (5th Cir.1977) ]. This analysis applies whether intervention of right or permissive intervention under Fed. R.Civ.P. 24 is claimed. Id., citing United Airlines, Inc. v. McDonald, 432 U.S.
385, 387, 97 S.Ct. 2464, 2466, 53 L.Ed.2d 423 (1977); NAACP v. New York, 413 U.S. 345, 366, 93 S.Ct. 2591, 2602-03, 37 L.Ed.2d 648 (1973); Smith Petroleum Service, Inc. v. Monsanto Chemical Co., 420 F.2d 1103, 1115 (5th Cir.1970).”
720 F.2d at 1516.[2] “These factors are a framework and ‘not a formula for determining timeliness.’” John Doe No. 1 v. Glickman, 256 F.3d 371, 376 (5th Cir.2001) (quoting Edwards v. City of Houston, 78 F.3d 983, 1004 (5th Cir.1996)). “The requirement of timeliness is not a tool of retribution to punish the tardy would-be intervenor, but rather a guard against prejudicing the original parties by the failure to apply sooner.” Sierra Club v. Espy, 18 F.3d 1202, 1205 (5th Cir.1994).
The first factor set out by the Eleventh Circuit Court of Appeals is the length of time the would-be intervenor knew or reasonably should have known of its interest in the case before it sought intervention. This is not necessarily the date the would-be intervenor learned of the existence of the legal action; rather, it is the time when the intervenor knew or should have known that its interest would be implicated by the action. Stallworth v. Monsanto Co., 558 F.2d at 264. The would-be intervenor must act promptly in protecting its interest. Here, it appears that QBE received notice of the action shortly after it was filed, because Structural Masonry, its insured, was one of the defendants in the original complaint filed on July 28, 2006, and it notified QBE that an action had been filed. On November 9, *1133 2006, QBE recognized that its interests and Structural Masonry’s interests might differ because on that date QBE sent a letter to Structural Masonry reserving its right to deny coverage under the policy. Almost 16 months after notifying Structural Masonry that there were potential coverage issues, QBE, on March 3, 2008, filed its motion for permission to intervene. In its motion, QBE asserted that it sought to intervene because otherwise it would be unable to determine what portion of any verdict that might be entered against Structural Masonry consisted of types of damages covered by the policy and it would be unable to determine what portion of any verdict consisted of damages for harm that occurred during the policy period. In seeking to intervene, QBE asked to participate in discovery, to submit interrogatories to the jury, and to request that a special-verdict form be submitted to the jury. This first factor thus weighs against QBE, which realized its interests were no longer being protected by Structural Masonry when it sent the first reservation-of-rights letter on November 9, 2006, yet waited almost 16 months before seeking to intervene.
The second factor is “the extent of prejudice to the existing parties as a result of the would-be intervenor’s failure to apply as soon as [it] knew or reasonably should have known of [its] interest.” United States v. Jefferson County, 720 F.2d at 1516. QBE is seeking not only to submit interrogatories and special-verdict forms to the jury with regard to its interest in the case, but is also seeking to participate in discovery. The 17 parties to this litigation have substantially completed written discovery and have deposed MPR’s corporate representative. The Eleventh Circuit Court of Appeals has indicated that discovery considerations are important in determining whether a motion to intervene is timely. See Chiles v. Thornburgh, 865 F.2d 1197, 1213 (11th Cir.1989) (concluding that a motion to intervene, filed before any discovery had begun, was timely). QBE is seeking to participate in discovery and seeking to litigate whether particular acts of its insured are covered by the insurance policy. “The most important consideration in determining timeliness is whether any existing party to the litigation will be harmed or prejudiced by the proposed in-tervenor’s delay in moving to intervene.” McDonald v. E.J. Lavino Co., 430 F.2d 1065, 1073 (5th Cir.1970). Clearly, QBE’s intervention will necessarily complicate and further delay the action, thus prejudicing the existing parties to the litigation.
The third factor is “the extent of prejudice to the would-be intervenor if [its] petition is denied.” United States v. Jefferson County, 720 F.2d at 1516. With regard to this factor, “the thrust of the inquiry must be the extent to which a final judgment in the case may bind the movant even though he is not adequately represented by an existing party.” United States v. Jefferson County, 720 F.2d at 1517. This Court has recognized that a declaratory-judgment action is available to determine coverage issues. Mutual Assur., Inc. v. Chancey, 781 So.2d 172 (Ala.2000). QBE has available to it the option of filing a separate declaratory-judgment action to resolve the coverage issue. In addressing prejudice under Rule 24(b)(2), QBE fails to explain why an independent declaratory-judgment action cannot be used to allocate between covered claims and noncovered claims any damages awarded by the jury in this case. Furthermore, we agree with Austin that Structural Masonry has “every reason to defend itself against all claims of damages of any type.” (Austin’s brief, p. 23.)
The fourth factor is “the existence of unusual circumstances militating either for *1134 or against a determination that the [motion for permission to intervene] is timely.” United States v. Jefferson County, 720 F.2d at 1516. Nothing in QBE’s motion to intervene shows any unusual or compelling circumstances that prevented it from seeking intervention earlier for the purposes of participating in discovery rather than after written discovery was substantially completed and depositions had begun.
Based on the foregoing, the trial court did not exceed its discretion in denying QBE’s motion to intervene because, under the facts of this case, QBE’s motion for permission to intervene was untimely. Additionally, even if QBE’s motion for permissive intervention had been timely, the trial court did not exceed its discretion in denying the motion because “[w]hether to allow an insurer permissive intervention, pursuant to Rule 24(b), Ala. R. Civ. P., in a tort action against its insured, so that the insurer can invoke Rule 49, Ala. R. Civ. P., and thereby obtain clarification of coverage issues, falls within the sound discretion of the trial court.” Mutual Assur., Inc. v. Chancey, 781 So.2d at 176 (Lyons, J., concurring specially). There are 17 parties to this litigation, which involves alleged defects in constructing a building, and the controversy is already sufficiently complex because of the nature of the action. See In re HealthSouth Corp. Ins. Litigation, 219 F.R.D. 688 (N.D.Ala.2004) (finding that intervention by the movants would unduly complicate and delay resolution of the matter and would inject collateral issues). The trial court property denied QBE’s motion for permission to intervene.
The judgment of the trial court is affirmed.
AFFIRMED.
COBB, C.J., and WOODALL, STUART, SMITH, PARKER, and SHAW, JJ., concur.
MURDOCK, J., dissents.
LYONS, J., recuses himself.
MURDOCK, Justice
(dissenting).
I respectfully dissent. Largely on the strength of the argument made to this Court by QBE, I conclude that the second and third “factors” as identified in United States v. Jefferson County, 720 F.2d 1511, 1516 (11th Cir.1983), militate in favor of intervention, rather than against it, as the main opinion concludes.
The second factor addresses a key issue, at least for purposes of this case: whether the existing parties would be unduly prejudiced by the proposed intervention. As one court has noted: “The requirement of timeliness is not a tool of retribution to punish the tardy would-be intervenor, but rather a guard against prejudicing the original parties by the failure to apply sooner.” Sierra Club v. Espy, 18 F.3d 1202, 1205 (5th Cir.1994).
I cannot agree with my colleagues that the state of the discovery process in this case was a good basis for not allowing QBE to intervene when it requested to do so, especially if QBE desires simply to participate in the discovery yet to come. As to the timing of QBE’s attempted intervention in relation to the general progress of discovery, I find merit in much of the following argument by QBE:
“Neither Appellee has made any argument concerning any prejudice that would be suffered by any party by the timing of QBE’s Motion to Intervene. Appellees cannot make such an argument legitimately because, regardless of when the case was filed, an examination of the record reveals that the case was still in its early stages when QBE’s Motion to Intervene was filed on March 3, 2008. One defendant had just filed its answer to Austin’s Cross-claim in December, 2007. In January 2008, Austin added an entirely new defendant to the *1135 case via a Third-party Complaint filed, without objection, less than 60 days pri- or to QBE’s Motion to Intervene. That Third-party defendant did not file its response to Austin’s Third-party complaint until after QBE filed its Motion to Intervene. Some parties did not respond to initial written discovery requests until after QBE filed its Motion to Intervene. (See Exhibit 1, as attached to QBE’s Motion to Supplement the Record on Appeal). Further, Mobile Press Register!, Inc.,] did not respond to Austin’s First Request for Production until after QBE’s Motion to Intervene was denied. (See Exhibit 2, as attached to QBE’s Motion to Supplement the Record on Appeal). In fact, the original parties were still disputing whether the documents first produced in initial discovery were appropriately responsive to the discovery requests after QBE’s Motion to Intervene was denied. (Exhibit 3, as attached to QBE’s Motion to Supplement the Record on Appeal). Finally, as of the filing of this brief, the case has not been set for trial, and only one party’s deposition has been taken. So despite Appellees’ protests regarding how long this case had been pending when QBE filed its Motion to Intervene, the record reveals that this case was still in its infancy when QBE’s motion was filed and new parties were still being added to the case. The timing of QBE’s Motion to Intervene, therefore, had no impact on the timing or progress of the underlying case, and therefore, there was no prejudice to the original parties by the timing of QBE’s Motion to Intervene.”
QBE’s reply brief, at pp. 13-15 (references to the record deleted).
As to the third factor, I conclude that a subsequent declaratory-judgment action by QBE would not be an adequate substitute for QBE’s intervention in this action and that QBE likely would suffer definite prejudice if it is not allowed to intervene. Again, I believe there is merit in much of QBE’s argument:
“A declaratory judgment action by QBE would not be an adequate remedy to protect its interest in this case. The coverage issues in this case are entirely fact based. A separate declaratory judgment action cannot determine the factual basis for the damages awarded in this action if there is a general verdict, and therefore, a declaratory judgment cannot determine the extent of damages awarded for covered consequential damages, versus noncovered damages for replacement or repair of the insured’s work. Further, even if a declaratory judgment was an effective remedy for QBE to resolve coverage issues, such an action would be wasteful of judicial resources, since the coverage questions can be more efficiently resolved in this action. A separate declaratory judgment action would involve QBE, Structural Masonry, and likely Structural Masonry’s other insurer Penn National, in additional burdensome litigation. Finally, a declaratory judgment action may very well be inconsistent with the damages awarded in the underlying action.”
QBE’s brief, pp. 12-13.

. In Universal, we recognized the dilemma faced by insurers in situations where the insured was being sued on claims that might or might not be covered by the insurance policy, and we adopted an alternate procedure involving permissive intervention and a bifurcated trial. QBE did not seek to intervene in the underlying action for the purpose of participating in a bifurcated trial.

. Other circuits have used similar factors. For example, the Sixth Circuit Court of Appeals has set out the following factors:
"(1) the point to which the suit has progressed; (2) the puipose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; (4) the prejudice to the original parties due to the proposed intervenors’ failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and (5) the existence of unusual circumstances militating against or in favor of intervention.”
Stupak-Thrall v. Glickman, 226 F.3d 467, 473 (6th Cir.2000).