I respectfully dissent. Largely on the strength of the argument made to this Court by QBE, I conclude that the second and third "factors" as identified in United States v.Jefferson County, 720 F.2d 1511, 1516 (11th Cir. 1983), militate in favor of intervention, rather than against it, as the main opinion concludes.
The second factor addresses a key issue, at least for purposes of this case: whether the existing parties would be unduly prejudiced by the proposed intervention. As one court has noted: "The requirement of timeliness is not a tool of retribution to punish the tardy would-be intervenor, but rather a guard against prejudicing the original parties by the failure to apply sooner." Sierra Club v. Espy, 18 F.3d 1202,1205 (5th Cir. 1994).
I cannot agree with my colleagues that the state of the discovery process in this case was a good basis for not allowing QBE to intervene when it requested to do so, especially if QBE desires simply to participate in the discovery yet to come. As to the timing of QBE's attempted intervention in relation to the general progress of discovery, I find merit in much of the following argument by QBE:
 "Neither Appellee has made any argument concerning any prejudice that would be suffered by any party by the timing of QBE's Motion to Intervene. Appellees cannot make such an argument legitimately because, regardless of when the case was filed, an examination of the record reveals that the case was still in its early stages when QBE's Motion to Intervene was filed on March 3, 2008. One defendant had just filed its answer to Austin's Cross-claim in December, 2007. In January 2008, Austin added an entirely new defendant to the *Page 1135 
case via a Third-party Complaint filed, without objection, less than 60 days prior to QBE's Motion to Intervene. That Third-party defendant did not file its response to Austin's Third-party complaint until after QBE filed its Motion to Intervene. Some parties did not respond to initial written discovery requests until after QBE filed its Motion to Intervene. (See Exhibit 1, as attached to QBE's Motion to Supplement the Record on Appeal). Further, Mobile Press Register[, Inc.,] did not respond to Austin's First Request for Production until after QBE's Motion to Intervene was denied. (See Exhibit 2, as attached to QBE's Motion to Supplement the Record on Appeal). In fact, the original parties were still disputing whether the documents first produced in initial discovery were appropriately responsive to the discovery requests after QBE's Motion to Intervene was denied. (Exhibit 3, as attached to QBE's Motion to Supplement the Record on Appeal). Finally, as of the filing of this brief, the case has not been set for trial, and only one party's deposition has been taken. So despite Appellees' protests regarding how long this case had been pending when QBE filed its Motion to Intervene, the record reveals that this case was still in its infancy when QBE's motion was filed and new parties were still being added to the case. The timing of QBE's Motion to Intervene, therefore, had no impact on the timing or progress of the underlying case, and therefore, there was no prejudice to the original parties by the timing of QBE's Motion to Intervene."
QBE's reply brief, at pp. 13-15 (references to the record deleted).
As to the third factor, I conclude that a subsequent declaratory-judgment action by QBE would not be an adequate substitute for QBE's intervention in this action and that QBE likely would suffer definite prejudice if it is not allowed to intervene. Again, I believe there is merit in much of QBE's argument:
 "A declaratory judgment action by QBE would not be an adequate remedy to protect its interest in this case. The coverage issues in this case are entirely fact based. A separate declaratory judgment action cannot determine the factual basis for the damages awarded in this action if there is a general verdict, and therefore, a declaratory judgment cannot determine the extent of damages awarded for covered consequential damages, versus noncovered damages for replacement or repair of the insured's work. Further, even if a declaratory judgment was an effective remedy for QBE to resolve coverage issues, such an action would be wasteful of judicial resources, since the coverage questions can be more efficiently resolved in this action. A separate declaratory judgment action would involve QBE, Structural Masonry, and likely Structural Masonry's other insurer Penn National, in additional burdensome litigation. Finally, a declaratory judgment action may very well be inconsistent with the damages awarded in the underlying action."
QBE's brief, pp. 12-13.