Norman P. OVERSTREET, Plaintiff,

v.

The WATER VESSEL "NORKONG", Her Hull, Tackle, Equipment, and Appurtenances, et al., Defendant.

Civ. A. No. S80–0312(R).

United States District Court,
S. D. Mississippi, S. D.

Feb. 19, 1982.

John L. Hunter, Pascagoula, Miss., for plaintiff.

Gregg L. Spyridon, New Orleans, La., for defendant.

## OPINION

DAN M. RUSSELL, Jr., Chief Judge.

This matter is before the Court on defendant's application for review of the United States Magistrate's order of October 2, 1981, entered in the above styled and numbered cause which permitted Anita Ann Overstreet, individually, and as representative on behalf of her minor children, Deede Dawn, Tammi Nyree, Chadwick David, and Nicholas Paul Overstreet to intervene in this action pursuant to Rule 24(a) F.R.Civ.P. (Intervention of Right).

Plaintiff, Norman Overstreet, filed his complaint alleging that he suffered injuries as the proximate result of the negligence and/or unseaworthiness of the defendant water vessel "NORKONG". Jurisdiction was obtained in rem through the seizure of the "NORKONG" while it was in the Pascagoula, Mississippi Port Facility. Claim was made to the vessel by the owners and a corporate surety bond was posted as security for the vessel's release. The vessel was ordered released on March 11, 1980.

The motion to intervene as plaintiffs in this cause was filed August 20, 1981. The intervenors seek to assert a claim for loss of consortium, society and services arising from the injuries sustained by the plaintiff, husband and father to the applicants herein.

Defendant contends that the order permitting intervention in this action was erroneous and contra to law. This Court, after consideration of the argument and authority submitted by counsel in this matter is of the opinion that the Magistrate's order was erroneous and contra to the weight of authority controlling this issue.

The issue involved here is whether or not applicants may intervene in an admiralty suit after the vessel in question has been arrested and released upon the owner's posting of a corporate surety bond. The release of ships from arrest is governed by the Supplemental Rules to the Federal Rules of Civil Procedure, specifically Supplemental Rule E. In the instant case the drilling rig "NORKONG" was released pursuant to Rule E(5)(c) (Release by Consent or Stipulation; Order of Court or Clerk; Costs) after claim by the owner, Asiatic Drilling, Inc.

■ The owner or other person with an interest in arrested or attached property can secure its release from a specific suit by the posting of a special bond. *United States v. Ames*, 99 U.S. 35, 25 L.Ed. 295 (1879). A special bond is one "conditioned to answer the judgment of the Court or any Appellate Court," Supplemental Rule E(5)(a). When a ship is released under a special bond the only Claims discharged are those made the basis of the libel under which the bond is given and the decree in rem in such proceeding executes only the claim which was made the basis of the release bond. Harmon, *Discharge and Waiver of Maritime Liens*, 47 Tulane L.R. 786, 795 (1973). In contrast, a general bond is one conditioned to answer the judgment of the Court "in all or any actions that may be brought thereafter in such Court in which the vessel is attached or arrested." Supplemental Rule E(5)(b). The terms of the Release Bond in this case clearly indicate that a special bond is involved here. The Release Bond specifically states that it is conditioned upon the claimant and the surety abiding by all orders of the Court and paying "the *said* plaintiff the amount awarded by the final decree rendered in the Court to which process is returnable, or in any Appellate Court." (emphasis added)

In the case of *The Oregon*, 158 U.S. 186, 15 S.Ct. 804, 39 L.Ed. 943 (1894) the Supreme Court addressed the issue of jurisdiction of intervening petitions which were filed after stipulation had been given for the release of the Oregon upon the original libel. There the Court held the assumption of jurisdiction over the intervening petitions to be in error because the liability of the sureties would be enlarged by the inclu-

sion of claims other than the ones which the sureties had previously agreed to pay. The Court pointed out that the sureties may be so well satisfied that the owner of the vessel has a defense to the original libel as to be willing to take upon themselves the contingency of a decree requiring its payment, but they may neither know, nor be able to conjecture what other demands may be made against the property after the bond is posted and the vessel released. The Court found that while the bond is intended as a substitute for the property itself, it is only such "in all points fairly in adjudication before the Court." *The Oregon,* 158 U.S. 186, 209, 15 S.Ct. 804, 813, 39 L.Ed. 943.

The *Oregon* Court cited the case of *The T. W. Snook,* 51 Fed.Rep. 244 wherein a vessel was arrested for damages done to another vessel by a collision and was released upon bond. Thereafter, an insurance company intervened claiming that the cargo of the libeled vessel had been insured by the company and totally destroyed by the collision. The Court held that the insurance company should not be allowed to intervene to share in the decree to the extent of what might remain of the bond after satisfying the decree in regard to the damage to the other vessel, since the bond was given only to satisfy the cause of action sued for in the original libel.

■ Thus, the applicable law seems to be settled. A special bond acts as security only as to the particular claim precipitating its posting. Only the plaintiff in the action which prompted the posting of the bond can recover against the bond, and the bond even if large enough is not available to satisfy judgments obtained by others who intervene in the law suit after the bond has been posted and the vessel released. See also *Norkin v. S/T The Sister Katingo,* 201 F.Supp. 223 (D.Conn.1962); and *The Willamette,* 70 Fed.Rep. 874 (9th Cir. 1895).

■ Nevertheless, applicants argue that their claims for loss of consortium are latent to the plaintiff's cause of action and as such should have been contemplated by the parties in the preparation of the release bond. There is little doubt that the applicant's claims for loss of consortium are closely related to plaintiff's claims for injuries. However, the terms of the bond speak only to that claim which was fairly in adjudication before the Court when the vessel was released not to what claims were contemplated or should have been contemplated by the parties at the time of its release. Libelants and their sureties are not bound to contemplate all actions which may conceivably be filed against a vessel when they seek its release. While the damages applicants claim arise directly from plaintiff's claim in the original libel they were not a matter of record when the vessel was released nor are they within the terms of the release bond. Even if applicants were allowed to intervene by right in this matter, this Court has serious doubts about their right to receive satisfaction of a judgment, if any, from the particular surety bond already posted in this case.

It should be noted that the Fifth Circuit has recently held in *Cruz v. Hendy International Co.,* 638 F.2d 719 (5th Cir. 1981) that the spouse of an injured seaman has a separate cause of action for loss of society. Both claims need not be presented in a single proceeding and Rule 19 Fed.R.Civ.P. does not require the joinder of the injured seaman in the spouse's action. Thus, we do not by our ruling preclude applicants' cause of action by denying them intervention.

■ Applicants further urge this Court to extend the liberality necessarily required in the allowance of interventions to assert claims against the proceeds of the sale of a vessel since, as applicants argue, the bond merely stands in lieu of the sale and distribution of the ship's proceeds. *See Jackson v. Inland Oil and Transport Co.,* 318 F.2d 802 (5th Cir. 1963); *Crabtree v. The S. S. Julia,* 290 F.2d 478, (5th Cir. 1961); *Point Landin v. Alabama Dry Dock & Shipbuilding Co.,* 261 F.2d 861 (5th Cir. 1958). But the situation here is radically different from a case in which the vessel has been sold and the proceeds paid into the registry of the Court. Liberality in allowing interventions where the vessel has been sold "is a recognition of the unavoidable conse-

quence of a sale of a vessel in an *in rem* proceeding. The sale cuts off the right of all non parties ... unless one claiming a lien is given the opportunity of asserting his right as against the proceeds resulting from the sale which has been made or is in the course of being carried out, the rights are forever and irretrievably lost." *Point Landing* supra at 866.

■ Our denial, here, of applicants' motion to intervene does not foreclose applicants' rights. Neither do we, as applicants contend, deny or withhold from them a remedy. Where a special bond has been posted, the *res* is free from attachment only for the cause of action for which the special bond has been posted. Anyone with a different cause of action, as applicants assert here (See *Cruz v. Hendy International Co.*, 638 F.2d 719 (5th Cir. 1981) giving rise to a maritime lien may commence their action by arresting or attaching the released *res.* While this may be little or no comfort to the applicants, now, if the vessel is beyond the jurisdiction of this Court, we nevertheless are compelled by the necessity for certainty and uniformity in the maritime environment to deny the motion to intervene. As was recently stated by the Fifth Circuit in *Merchants National Bank v. Dredge Gen. G. L. Gillespie*, 663 F.2d 1338, 1981:

> The Federal Courts have a great responsibility to speak consistently in maritime controversies because of their recognized national and international significance. They must take care not to fashion rules and exceptions for particular circumstances without assessing their impact in other situations.

After consideration of the applicable authority and the particular circumstances of this case the Court finds that the Magistrate's order allowing applicants to intervene in this cause should be vacated and the motion to intervene should be denied. It should be noted that here applicants have contended and the Magistrate ordered that they could intervene as of right. Denial of leave to do so by this Court is appealable. *Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129, 87 S.Ct. 932, 17

L.Ed.2d 814 (1967); *Brotherhood of Railroad Trainmen v. Baltimore & O. R. Co.*, 331 U.S. 519, 524–525, 67 S.Ct. 1387, 1389–1390, 91 L.Ed. 1646 (1947).

An order consistent with the above opinion shall be submitted within the time prescribed by the local rules.