REVISED JULY 20, 2001

## UNITED STATES COURT OF APPEALS
### For the Fifth Circuit

———————————————————————

No. 00-50832
SUMMARY CALENDAR

———————————————————————

JOHN DOE #1, for and on behalf of themselves and a Class of Others Similarly situated; JOHN DOE #2, for and on behalf of themselves and a Class of Others Similarly situated; TEXAS FARM BUREAU; THE AMERICAN FARM BUREAU FEDERATION; JOHN DOE #3,
*Plaintiffs-Appellees,*


v.


DANIEL GLICKMAN, Etc; ET AL,
*Defendants,*

ANIMAL PROTECTION INSTITUTE,
*Movant-Appellant.*

———————————————————————

Appeal from the United States District Court
for the Western District of Texas

———————————————————————

July 18, 2001

Before REYNALDO G. GARZA, BARKSDALE, and STEWART, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

The Appellant, the Animal Protection Institute ("the Institute"), appeals the Waco Federal District Court's dismissal of its motion to intervene in *Doe v. Glickman,* CV No. W-99-CA-335. For the reasons stated below, we **Reverse**.

1

1.      **Factual and Procedural Background.**

This case arises out of the Institute's request that the United States Department of Agriculture ("USDA"), acting through Wildlife Services and the Animal Plant Health Inspection Service, disclose information concerning the Livestock Protection Collar Program ("Program"), including the names and locations of the Program's participants. A livestock protection collar ("Collar") is a device designed to protect livestock by killing their predators. The Collar fastens around the livestock's neck and has a pouch that contains sodium fluoroacetate, commonly known as Compound 1080. When predators such as coyotes or mountain lions attack livestock, they usually bite the domesticated animal's neck. When a predator bites the neck of a domesticated animal equipped with a Collar, the Collar releases sodium fluorocetate, thereby poisoning and killing the predator.

On November 18, 1998, pursuant to the Freedom of Information Act ("Act"),[1] the Institute formally requested the USDA to disclose information concerning the Program and the Collar's use in seven states. The USDA disclosed the requested information concerning the Program and the Collar's use, but only as to five of the seven states. The USDA refused to disclose any of the information concerning the Program or the Collar's use in Texas or New Mexico. The Institute filed a supplemental request with the USDA seeking that information. On May 27, 1999, the USDA disclosed some information concerning the Program and the Collar's use in Texas and New Mexico, but did not disclose the names and locations of the Program's participants from those states ("Identifying Information"). The USDA withheld the Identifying

---

[1]5 U.S.C. § 552 (1998).

Information pursuant to 5 U.S.C. § 552b (c)(6).[2]

The Institute filed an administrative appeal. The USDA did not respond. In response, on August 31, 1999, the Institute sued the USDA in Washington, D.C. District Court, *Animal Prot. Inst. v. Wildlife Services,* CV No. 99-2324 ("D.C. Lawsuit"), seeking the disclosure of the Identifying Information pursuant to the Act. Because of the D.C. Lawsuit, the USDA prepared to disclose the Identifying Information to the Institute on October 29, 1999.

On October 29, 1999, counsel for the American Farm Bureau Federation ("Plaintiff's Counsel") learned that the USDA intended to disclose the Identifying Information that afternoon. Plaintiff's Counsel contacted the Assistant United States Attorney ("AUSA") representing the USDA and asked the AUSA to delay disclosing the Identifying Information until November 3, 1999 so that she could evaluate her client's legal options. The AUSA pledged not to disclose the Identifying Information that afternoon, but warned that it was possible that the USDA would disclose the Identifying Information on November 1, 1999.

On November 1, 1999, before the USDA disclosed the Identifying Information, the Appellees, aware of the D.C. Lawsuit and rather than intervene in that lawsuit, filed a separate lawsuit against the USDA in Waco Federal District Court ("Waco Court"), *Doe v. Glickman,* CV No. W-99-CA-335 ("Waco Lawsuit"). The Appellees sought a temporary restraining order ("TRO") to enjoin the USDA from disclosing the Identifying Information. They alleged that the disclosure would be a clearly unwarranted invasion of privacy, not outweighed by the public's interest in the Identifying Information. At 3:00 p.m. that same day, the Waco Court granted the

---

[2]Pursuant to 5 U.S.C. §552b (c)(6), a governmental agency cannot disclose information of a personal nature which would constitute a clearly unwarranted invasion of personal privacy, unless the agency finds that the public interest requires disclosure. 5 U.S.C. § 552b (c)(6) (1999).

TRO *ex parte*. Three days later, on November 4, 1999, the Institute learned of the Waco Lawsuit through a press release announcing the issuance of the TRO. On November 15, 1999, the Waco court entered a stipulated and agreed preliminary injunction.

The USDA filed motions with the Waco Court to transfer venue in the Waco Lawsuit to the Washington, D.C. District Court ("D.C. Court") and, alternatively, stay the Waco Lawsuit pending the D.C. Lawsuit. The Appellees responded. On January 20, 2000, the Waco Court denied both of the USDA's motions.

Having failed to stay or transfer the Waco Lawsuit to the D.C. Court, the USDA filed a motion to stay the D.C. Lawsuit with the D.C. Court. The Institute filed a response opposing the USDA's motion. After considering the motion and response, the D.C. Court, on June 13, 2000, stayed the D.C. Lawsuit pending the outcome of the Waco Lawsuit. The Institute, on July 12, 2000, filed a motion to intervene in the Waco Lawsuit with the Waco Court. The Institute sought an intervention of right or, alternatively, a permissive intervention. The Appellees opposed the Institute's motion, arguing that it was untimely and that allowing the Institute to intervene would be prejudicial. On August 8, 2000, the Waco Court denied the Institute's motion to intervene. On August 28, 2000, the Institute filed its notice of interlocutory appeal from the denial of its motion to intervene in the Waco Lawsuit.

**2.	Discussion.**

This appeal presents us with the issue of whether we should allow the Institute to intervene in the Waco Lawsuit. The Institute argues that it is entitled to an intervention of right or, alternatively, to a permissive intervention. The Appellees contend that the Institute is neither entitled to an intervention of right or a permissive intervention since the Institute's motion to

4

intervene was untimely and the USDA can adequately protect the Institute's interests. Because of

our resolution of this case, we need not reach the merits of whether the Institute is entitled to a

permissive intervention.

### 2.1 The Institute is entitled to an intervention of right.

Federal Rule of Civil Procedure 24(a) governs interventions of right. FED. R. CIV. P. 24(a);

*Ruiz v. Estelle,* 161 F.3d 814, 827 (5th Cir. 1998). It states, in pertinent part:

> Upon timely application anyone shall be permitted to intervene in an action . . . when
> the applicant claims an interest relating to the property or transaction which is the
> subject of the action and the applicant is so situated that the disposition of the action
> may as a practical matter impair or impede the applicant's ability to protect that
> interest, unless the applicant's interest is adequately represented by existing parties.

FED. R. CIV. P. 24(a) (2000). "Federal courts should allow intervention where no one would be

hurt and the greater justice could be attained." *Sierra Club v. Espy,* 18 F.3d 1202, 1205 (5th Cir.

1994). Thus, a party is entitled to an intervention of right if (1) the motion to intervene is timely;

(2) the potential intervener asserts an interest that is related to the property or transaction that

forms the basis of the controversy in the case into which she seeks to intervene; (3) the disposition

of that case may impair or impede the potential intervener's ability to protect her interest; and (4)

the existing parties do not adequately represent the potential intervener's interest. *Ford v. City of

Huntsville,* 242 F.3d 235, 239 (5th Cir. 2001); *Edwards v. City of Houston,* 78 F.3d 983, 1000

(5th Cir. 1996); *Espy,* 18 F.3d at 1204-05; *Stallworth v. Monsanto Co.,* 558 F.2d 257, 263-67

(5th Cir. 1977). Generally, we review the denial of an intervention of right *de novo*. *Ruiz,* 161

F.3d at 827.

### 2.11 The Institute's motion to intervene was timely.

"The requirement of timeliness is not a tool of retribution to punish the tardy would-be

5

intervener, but rather a guard against prejudicing the original parties by the failure to apply sooner." *Espy,* 18 F.3d at 1205. "[A motion to intervene's] timeliness is to be determined from all the circumstances." *Edwards,* 78 F.3d at 1000. "Th[is] analysis is contextual; absolute measures of timeliness should be ignored." *Espy,* 18 F.3d at 1205. A court should ignore "[h]ow far the litigation has progressed when intervention is sought[,] . . . the amount of time that may have elapsed since the institution of the action . . . [, and] the likelihood that intervention may interfere with orderly judicial processes." *Stallworth,* 558 F.2d at 266.

When determining whether a motion to intervene is timely, a court must consider the following four factors: (1) how long the potential intervener knew or reasonably should have known of her stake in the case into which she seeks to intervene; (2) the prejudice, if any, the existing parties may suffer because the potential intervener failed to intervene when she knew or reasonably should have known of her stake in that case; (3) the prejudice, if any, the potential intervener may suffer if the court does not let her intervene; and (4) any unusual circumstances that weigh in favor of or against a finding of timeliness. *Id.* at 264-66; *Ford,* 242 F.3d at 239; *Ruiz,* 161 F.3d at 827; *Edwards,* 78 F.3d at 1000; *Espy,* 18 F.3d at 1205. These factors are a framework and "not a formula for determining timeliness." *Edwards,* 78 F.3d at 1004. A motion to intervene may still be timely even if all the factors do not weigh in favor of a finding of timeliness. *Stallworth,* 558 F.2d at 267.

If a court denies a motion to intervene because it was untimely, we generally review this decision, and only this decision, for an abuse of discretion. *Ruiz,* 161 F.3d at 827. To be entitled to the deferential standard of review, however, a court must articulate the reason the motion was untimely. *Edwards,* 78 F.3d at 1000. If the court fails to articulate the reason the motion to

6

intervene was untimely, we review the timeliness element *de novo. Id.* It appears that a court fails to articulate a reason a motion to intervene is untimely if it does not expressly reference any of the four factors used to decide a motion to intervene's timeliness. *See Edwards,* 78 F.3d at 999-1000 & n. 22 (applying *de novo* review when the trial court failed to expressly reference the four factors but stated that the appellants "were entitled to ask to intervene earlier").

The Waco Court found that the motion was untimely and that the USDA adequately protected the Institute's interests.[3] It did not, however, expressly reference any of the four timeliness factors. Thus, it would appear that we should review the timeliness element *de novo* and not for an abuse of discretion. *See id.* at 1000; *Ruiz,* 161 F.3d at 827. We do not need to resolve the question of whether a court must expressly reference any of the four timeliness factors to be entitled to the deferential standard of review because, no matter the standard of review, the Institute is entitled to a finding of timeliness.

### 2.111 The Institute filed its motion to intervene approximately one month after it became aware of its stake in the Waco Lawsuit.

"Courts should discourage premature intervention [because it] wastes judicial resources. *Espy,* 18 F.3d at 1206. Thus, "the timeliness clock runs either from the time the applicant knew

---

[3]With respect to the Institute's motion to intervene, the August 8, 2000 order states in toto:

> The Animal Protection Institute has filed a motion to intervene in this suit. However, the motion is untimely since API has known about the suit for some time. Additionally, API's interests can be adequately protected by the Government, which has taken a position in accordance with API's ultimate goal–the release of identifying information regarding the participants in the LPC program. API's arguments regarding the effects of the LPC's and its role as an animal advocacy organization are irrelevant. Accordingly, the Animal Protection Institute's Motion to Intervene is **DENIED**.

7

or reasonably should have known of his [stake in the case into which he seeks to intervene] or from the time he became aware that his [stake] would no longer be protected by the existing parties to the lawsuit." *Edwards,* 78 F.3d at 1000 (internal quotations and citations omitted). The timeliness clock does not run from the date the potential intervener knew or reasonably should have known of the existence of the case into which she seeks to intervene. *Espy,* 18 F.3d at 1206 ("[W]e reject[] the notion that the date on which the would-be intervener became aware of the pendency of the action should be used to determine whether it acted promptly."); *Stallworth,* 558 F.2d at 265 ("[T]he time that the would-be intervener first became aware of the pendency of the case is not relevant to the issue of whether his application was timely.").

It is undisputed that the Institute has a stake in the Waco Lawsuit. The question, then, is when the Institute's stake materialized, and thus, when it knew or reasonably should have known of its stake in the Waco Lawsuit. *See Espy,* 18 F.3d at 1205-006.

In the D.C. Lawsuit, the Institute seeks to compel the USDA to disclose the Identifying Information. In the Waco Lawsuit, the Appellees seek to prevent the USDA from disclosing the Identifying Information. The substantive issue underlying both the D.C. and Waco Lawsuits is the same–does the public's interest in the Identifying Information outweigh the potential invasion of privacy that could result if the USDA were to disclose that information ("Issue").[4]

The D.C. Court stayed the D.C. Lawsuit, the first lawsuit, pending the outcome of the

---

[4]The Appellees characterize the substantive issue underlying the Waco Lawsuit as being "much broader," e.g. "whether the disclosure of the [Identifying Information] . . . would constitute an arbitrary and capricious exercise of the Government's authority and an unlawful abuse of agency discretion." Appellees have mischaracterized the substantive issue underlying the Waco Lawsuit. The Appellees' concerns are merely sub-issues of the larger question–does the public's interest in the Identifying Information outweigh the potential invasion of privacy that could result if the USDA were to disclose it.

Waco Lawsuit, the second lawsuit, on June 13, 2000. Until then, the D.C. Lawsuit could have been the lawsuit where the Issue would be decided. The stay made it clear that the Waco Lawsuit would be the lawsuit where the Issue would be decided. The stay, further, made it clear that the Institute would have to become a party to the Waco Lawsuit, if it wanted to be heard on the Issue. Thus, we conclude that the Institute's stake in the Waco Lawsuit materialized on June 13, 2000.[5] *See Espy,* 18 F.3d at 1206 (finding that the potential intervener's stake materialized after a preliminary injunction, not when the fourth amended complaint, which raised potential claims was filed the year before); *cf. Stallworth,* 558 F.2d at 265 (finding that early intervention will squander scarce judicial resources and increase litigation costs).

The Institute filed its motion to intervene in the Waco Lawsuit on July 12, 2000, before trial and any final judgment. We cannot say that this delay is unreasonable. *See Edwards,* 78 F.3d at 1000 & 1001 (finding that this factor weighed in favor of timeliness when the potential intervener knew or reasonably should have known of its stake on February 3, 1993 and the potential interveners filed their respective motions to intervene on March 12 and 22, 1993) ("[M]otions . . . filed prior to entry of judgment favors timeliness[.]"); *Stallworth,* 558 F.2d at 266-67 (finding that this factor weighed in favor of a finding of timeliness when the potential intervener knew or should have known of its stake on March 7, 1975 and filed her motion to intervene on April 4, 1975). Accordingly, after our *de novo* review, we conclude that this factor weighs in favor of a finding of timeliness.

---

[5]Had the Waco Court granted the USDA's motion to stay the Waco Lawsuit pending the D.C. Lawsuit, the Appellees, surely, would have argued to the D.C. Court that they be allowed to intervene in the D.C. Lawsuit and that their stake in that lawsuit did not materialize until the Waco Court stayed its lawsuit, the Waco Lawsuit. The Appellees, however, would possibly have unclean hands.

In *Stallworth,* we held that the trial court abused its discretion when it "mistakenly used an unspecified time when it supposed that the appellants must have learned of the pendency of the action rather than the time when they knew or should have known of their [stake] in the action as its starting point in assessing whether they acted promptly to protect themselves." *Stallworth,* 558 F.2d at 267. In its January 20, 2000 order, the Waco District Court articulated as its sole reason for finding that the Institute's motion for intervention was untimely was that "[the Institute] has **known about the suit** for some time." (emphasis added). From this lone statement, we are led to the conclusion that the Waco Court meant that the Institute had known about **the existence of** the suit for some time rather than the Institute had known about **its stake in** the suit. Accordingly, we find that the Waco Court abused its discretion when it used the date the Institute became aware of the existence of the Waco Lawsuit as its starting point to decide that the Institute's motion was untimely. *See id.* at 266-67.

**2.112  The existing parties to the Waco Lawsuit would not have suffered any less prejudice had the Institute filed sooner.**

The second factor is concerned "only [with] that prejudice which would result from the would-be intervener's failure to request intervention as soon as he knew or reasonably should have known about his [stake] in the action." *Stallworth,* 558 F.2d at 265. The Appellees argue that allowing the Institute to intervene at this stage of the lawsuit "might impose serious costs on the [Appellees], the government defendants, and the federal courts . . . [and that] if allowed to intervene [the Institute] may seek to cross-examine the witnesses or otherwise revisit evidence [which] the district court . . . ruled that the parties 'need not repeat.'" The Appellees allegations are general and speculative and concern inconvenience and not prejudice; they do not concern

10

prejudice that results from the one month delay. They deal with results that would have occurred whether the delay was one week or one year.

As stated above, courts should ignore the likelihood that intervention may interfere with orderly judicial processes. *Stallworth,* 558 F.2d at 266. "Prejudice must be measured by the delay in seeking intervention, not the inconvenience to the existing parties of allowing the intervener to participate in the litigation" *Espy,* 18 F.3d at 1206. The Institute filed its motion to intervene approximately one month after it became aware of its stake in the Waco Lawsuit and before trial and any final judgment. We cannot say that the existing parties will suffer any more prejudice because the Institute failed to intervene sooner. "Moreover, . . . no prejudice can come from renewed discovery or pretrial proceedings, because an intervener must accept the proceedings as he finds them." *Espy,* 18 F.3d at 1206 n. 3 (internal quotations and citations omitted). She "has no right to relitigate issues already decided." *Id.* Accordingly, the existing parties would not have suffered any less prejudice had the Institute filed its motion to intervene sooner.

**2.113 If the Institute is not allowed to intervene, it will be prejudiced.**

The third factor focuses on the prejudice the potential intervener would suffer if not allowed to intervene. In the Waco Lawsuit, the Waco Court could rule in favor of the Appellees. If it does, the USDA will be prohibited, by court order, from disclosing the Identifying Information that the Institute seeks. If not allowed to intervene, the Institute, as a nonparty, will not be able to participate in the trial concerning that ruling nor will it be able to appeal that ruling. *Edwards,* 78 F.3d at 1002-03. Considering the existence of the D.C. Lawsuit and the Institute's inability to appeal an adverse ruling in the Waco Lawsuit, it is clear the Institute could suffer

11

prejudice. *See Ford,* 242 F.3d at 240 (finding that the potential intervener could suffer prejudice if not allowed to intervene into an action because the ruling in that action would restrict any remedy she sought in a separate suit); *Edwards,* 78 F.3d at 1002-03 (finding that the potential interveners who would not have the opportunity to appeal the ruling of the action into which they sought to intervene could suffer prejudice).

**2.114** **The existence of the D.C. Lawsuit is an unusual circumstance that weighs in favor of a finding of timeliness.**

Finally, we must decide whether any unusual circumstances weigh in favor of or against a finding that the motion to intervene was timely. The Institute filed its lawsuit in the D.C. Court.[6] The Appellees were aware of the D.C. Lawsuit. Nonetheless, the Appellees chose to file their lawsuit in the Waco Court, rather than intervene in the existing D.C. Lawsuit. Until the D.C. Court stayed the D.C. Lawsuit pending the outcome of the Waco Lawsuit, either lawsuit could have been the lawsuit where the Issue would be decided. This fact is an unusual circumstance that weighs in favor of intervention. Because each of the foregoing elements weighs in favor of a finding of timeliness, we find that the Institute's motion to intervene was timely.

**2.12** **The interest the Institute asserts is related to the transaction that forms the basis of the controversy in the Waco Lawsuit.**

_____

[6]5 U.S.C. § 552 (a)(4)(B) governs venue in suits brought under the Act. It provides in relevant part:

> On complaint, the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, *or in the District of Columbia*, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. . . .

5 U.S.C. § 552 (a)(4)(B) (1999) (emphasis added).

A potential intervener asserts an interest that is related to the property or transaction that forms the basis of the controversy in the case into which she seeks to intervene, if the potential intervener has a "direct, substantial, [and] legally protectable" interest in the property or transaction that forms the basis of the controversy in the case into which she seeks to intervene. *Espy,* 18 F.3d at 1207; *Edwards,* 78 F.3d at 1004. Pursuant to the Act, the Institute seeks to compel the USDA to disclose the Identifying Information. The transaction that forms the basis of the controversy in the Waco Lawsuit is the disclosure of the Identifying Information. "Since the interest test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process," *Espy,* 18 F.3d at 1207 (internal quotations and citations omitted), we conclude that the Institute asserts an interest related to the transaction that forms the basis of the controversy in the Waco Lawsuit. *See id.* at 1207; *Edwards,* 78 F.3d at 1004. Moreover, the Appellees have implicitly conceded that the Institute's interest is sufficiently related to the transaction that forms the basis of the controversy in the Waco Lawsuit to warrant intervention.[7]

### 2.13 The disposition of the Waco Lawsuit could prevent the Institute's ability to obtain the Identifying Information.

Thirdly, the potential intervener must be situated so that the disposition of the case into which she seeks to intervene may impair or impede her ability to protect her interest. *Ford,* 242 F.3d at 240; *Espy,* 18 F.3d at 1207. Both Lawsuits concern the disclosure of the Identifying

---

[7]In their response to the USDA's motion to transfer venue, the Appellees expressly concede that the Institute should be allowed to intervene in the Waco Lawsuit. Specifically, the Appellees state: "If the animal rights group [, the Institute] *wishes to be heard, they can intervene in this case*–indeed, since both the group and its lawyers are based in Boulder, Colorado, Waco should be a more convenient forum for them than Washington, D.C." (emphasis added).

Information. In the D.C. Lawsuit, the parties seek to compel disclosure while in the Waco Lawsuit, the parties seek to prevent disclosure. In both Lawsuits, the parties are seeking a ruling on whether the public's interest in the Identifying Information outweighs the potential invasion of privacy that could result if the USDA discloses that information. The Waco Court could rule that the potential invasion of privacy that could result if the USDA discloses the Identifying Information outweighs the public's interest in that information. Then, the USDA, by court order, would be prohibited from disclosing the Identifying Information.

If not allowed to intervene, the Institute would be prevented from ever being heard in a lawsuit that has the potential to end its quest to compel the USDA to disclose the Identifying Information. Moreover, that ruling could collaterally estop the Institute from re-litigating the Issue in the D.C. Court. Thus, the Waco Lawsuit has the potential to prevent the Institute from obtaining the Identifying Information without ever being heard. For these reasons, we conclude that the disposition of the Waco Lawsuit has the potential to impair the Institute's interest. *Cf. Espy,* 18 F.3d at 1207 ("an intervenor's interest is impaired by the *stare decisis* effect of the district court's judgment").

**2.14    The USDA does not adequately represent the Institute's interest.**

The potential intervener has the burden of proving that the existing parties do not adequately represent her interest. *Espy,* 18 F.3d at 1207; *Trbovich v. United Mine Workers,* 404 U.S. 528, 538 n.10, 92 S. Ct. 630, 636, 30 L. Ed. 2d 686 (1972). This burden, however, is "minimal." *Id.* "The potential intervener need only show that the representation *may be* inadequate." *Id.* (emphasis added) (internal quotation omitted).

The Institute contends that the public's interest in the Identifying Information outweighs

14

the potential invasion of privacy that could result if the USDA were to disclose it. The Institute argues that the USDA's representation may be inadequate because the USDA, in the D.C. Lawsuit, took a position contrary to the Institute's contention and the position it now takes. The Institute, further, argues that the USDA's representation, thus far, has been inadequate because the USDA failed to contest the TRO or preliminary injunction and object to the admission of questionable evidence.[8]

The USDA is a governmental agency that must represent the broad public interest, not just the Institutes's concerns. *See Espy,* 18 F.3d at 1208. Given the Institute's minimal burden and USDA's duty to represent the broad public interest, not just the Institute's, we conclude that USDA's representation of the Institute may be inadequate. *Id.*

### 3.     Conclusion.

Applying Rule 24 (a)'s four requirements we conclude that the Institute is entitled to intervene as a matter of right. Their motion was timely and the Waco Court's use of the date the Institute knew of the existence of the Waco Lawsuit as its starting point to determine timeliness was an abuse of discretion. The interest the Institute asserts is related to the transaction that forms the basis of the controversy in the Waco Lawsuit, the disclosure of the Identifying Information. Failing to allow the Institute to intervene could prevent the Institute from ever obtaining the Identifying Information. And the USDA, because of its presumably objective position, may inadequately represent the Institute's interest. Therefore, we conclude that the Waco Court, in spite of its diligent and evenhanded effort to manage this difficult and complex

---

[8]The Institute complains that the USDA "sat idle" while the Appellees offered evidence of "animal rights terrorism" that had nothing to do with the Institute or the Collar.

15

case, erred in denying the Institute's intervention of right.  The order denying the intervention is

**Reversed** and the Waco Court is to proceed in a manner consistent with this opinion.