**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 01-41462

AMERICAN V SHIPS LIMITED, LLC

Plaintiff

v.

NORDICA ENGINEERING SERVICES, INC; RADIO HOLLAND
USA INC; ROBERT MIHOVIL, doing business as Milhovil
Photography; NORBANKEN AB; MCNATT CONTRACTING INC; THE
MILLHOUSE INC; SUDERMAN STEVEDORES INC; SMITH-HAMM INC,
doing business as Malin Construction Co; HISTORIC BEVERAGE
COMPANY; SAM SAKOWITZ CLARK; PALMS LIQUOR INC, doing
business as Palms Liquor; SPEEDY'S PRINTING INC, doing business
as Speedy's Kwik Kopy Printing; WARSILA NORTH AMERICA INC;
AALBORG INDUSTRIES HOUSTON INC; AGGREKO INC; NAUTICAL DESIGN
INC; GAMBLERS GENERAL STORE INC; MANNING ELECTRIC INC; HIBERNIA
NATIONAL BANK; CERTAIN UNDERWRITERS SUBSCRIBING TO MARINE PORT
RISK INSURANCE POLICY DATED MARCH 5, 2001; US FILTER RECOVERY
SERVICES SOUTHWEST INC; PETROLEUM COMMUNICATIONS INC

Intervenor-Plaintiffs-Appellees

v.

TALISMAN CRUISES ET AL

Defendants

TALISMAN CRUISES, LLC, in personam

Defendant-Appellee

v.

CASINO DATA SYSTEMS INC

Movant-Appellant

Appeal from the United States District Court
for the Northern District of Texas
(G-01-CV-443)

March 19, 2002

Before ALDISERT[*], DAVIS, and PARKER, Circuit Judges.

PER CURIAM:[**]

Casino Data Systems, Inc. ("Appellant") appeals from an Order Denying Motion for Leave to Intervene in the U.S. Marshal's sale of the vessel M/V TALISMAN ("vessel"). We must decide whether the district court erred in denying Appellant's Motion to Intervene as untimely.

I.

Appellant is a Nevada corporation, with its principal place of business in Las Vegas, Nevada, which provides various venues with gaming technology and related services. The record indicates that Appellant contracted with Talisman Cruises LLC ("Talisman") to provide various gambling equipment to be used on the vessel, an ocean-going commercial passenger/casino cruise ship under Bahamian flag.

---

[*] Circuit Judge of the Third Circuit Court of Appeals, sitting by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.4.

Pursuant to the agreement, Appellant furnished the ship with:  slot machines; various spare parts; signage; hardware and software related to surveillance monitors, diagnostic monitors, slot accounting and player tracking; and labor and reimbursable expenses related to installing these various hardware and computer systems and in training users in their application.  The equipment was shipped to Talisman between March and September of 2001.  This equipment and services form the basis of Appellant's claim for a maritime lien, in an amount not less than $451,441.52, upon the vessel for "necessaries" pursuant to 46 U.S.C. § 31342.

The vessel was arrested at the Port of Galveston on or about July 19, 2001.  Shortly thereafter, on September 7, 2001, the district court ordered it sold at a Marshal's auction to take place on November 20, 2001.  In its order, the court set an October 19, 2001 deadline for filing all claims related to the sale.  The court also ordered publication of the sale in the Houston Chronicle, the Galveston County Daily News, the Journal of Commerce and Tradewinds.  Appellant alleges, however, that it did not receive actual notice of the action until October 29, 2001, when Deborah Neese, the Credit and Collections Manager of CDS, received a telephone call from Robin Powell, an employee of Talisman.  Along with the telephone call, Ms. Neese also received a facsimile copy of the district court's order dated October 26,

2001 denying Talisman's Motion to Remove Gaming Equipment and Other Property Owned by Talisman from the Vessel Before Sale.

On October 29, 2001, Appellant attempted to engage the law firm of Akin, Gump, Strauss, Hauer & Feld, LLP in order to protect its interest with respect to the sale. However, Akin Gump informed Appellant that it could not represent them in this matter because of a conflict with another one of its clients. Appellant then contacted Attorney Robert Krakow of the law firm Gibson, Dunn & Crutcher LLP on November 6, 2001. Gibson, Dunn & Crutcher prepared and filed a Motion for Leave to Intervene and Verified Complaint in Intervention of Casino Data Systems, Inc. on November 16, 2001. The district court denied the motion the same day as untimely.

Subsequently, Appellant asked the law firm of Strasburger & Price LLP to substitute as counsel. On November 30, 2001, Appellant filed a Motion for Reconsideration of Court's November 16, 2001 Order Denying Casino Data Systems, Inc.'s Motion For Leave to Intervene. The district court denied the Motion for Reconsideration on December 4, 2001.

A judicial sale of the vessel was accomplished on November 20, 2001, with Intervener Norbanken AB (PUBL) ("Norbanken") making a credit bid purchase of the vessel for $2 million. The funds from the sale are currently being held by the court pending determination of the priority of properly filed liens.

Thereafter, Appellant filed a Notice of Appeal in the

4

district court and sought leave of this court to file an expedited appeal, pursuant to Fifth Circuit Rule 27.5.  Appellant seeks to have the district court permit its appearance in order to present evidence of its maritime lien for priority consideration at the time that funds from the U.S. Marshal's sale are distributed.  The request for expedited appeal was granted on December 27, 2001.  This appeal follows.

## II.

The district court denied Appellant's Rule 24 Motion for Intervention as untimely.  "If a court denies a motion to intervene because it was untimely, we generally review this decision, and only this decision for an abuse of discretion." John Doe #1 v. Glickman, 256 F.3d 371, 376 (5th Cir. 2001) (citing Ruiz v. Estelle, 161 F.3d 814, 827 (5th Cir. 1998)).  "To be entitled to the deferential standard of review, however, a court must articulate the reason the motion was untimely." Glickman, 161 F.3d at 376 (citing Edwards v. City of Houston, 78 F.3d 983, 1000 (5th Cir. 1996)).  "If the court fails to articulate the reason the motion to intervene was untimely, we review the timeliness element de novo."  Id.  "It appears that a court fails to articulate a reason a motion to intervene is untimely if it does not expressly reference any of the four factors used to decide a motion to intervene's timeliness."  Id. (citing Edwards, 78 F.3d at 999-1000).  Because the district court did not reference any of the four factors  in making its

5

untimeliness determination, we review its decision de novo.

Appellant seeks to intervene as a party plaintiff in the U.S. Marshal's sale of the vessel, pursuant to Federal Rule of Civil Procedure 24(a), in order to present its claim to the distribution of sale funds. Rule 24(a) governs interventions of right. It provides that:

> Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

FED. R. CIV. P. 24(a).

This court has repeatedly recognized that "[f]ederal courts should allow intervention where no one would be hurt and the greater justice could be attained." Glickman, 256 F.3d at 375 (citing Sierra Club v. Espy, 18 F.3d 1202, 1205 (5th Cir. 1994)). Therefore a party is entitled to an intervention of right if:

> (1) the motion to intervene is timely; (2) the potential intervener asserts an interest that is related to the property or transaction that forms the basis of the controversy in the case into which she seeks to intervene; (3) the disposition of that case may impair or impede the potential intervener's ability to protect her interest; and (4) the existing parties do not adequately represent the potential intervener's interest.

Id. at 375 (citing Ford v. City of Huntsville, 242 F.3d 235, 239 (5th Cir. 2001); Edwards, 78 F.3d at 1000; Espy, 18 F.3d at 1204-

6

1205; <u>Stallworth v. Monsanto</u>, 558 F.2d 257, 263-267 (5th Cir. 1977)).

A.

It is uncontested that Appellant asserts an interest related to the controversy, the disposition of which may impair or impede its ability to protect that interest. Appellant has provided evidence that it possesses a maritime lien for necessaries aboard the vessel pursuant to 46 U.S.C. § 31342. Furthermore, the existing parties to the action do not adequately represent Appellant's interest. Unless Appellant is permitted to intervene in the present action it will be forever prohibited from making a claim against the vessel and from recouping any of the sale proceeds currently held in the registry of the court. Finally, not only are Appellees not interested in representing Appellant's interest, as evidenced by their opposition to intervention, in many cases Appellant's interest may compete with Appellees' as they all seek contribution from a limited stake. Consequently, Appellant can easily satisfy the final three requirements for intervention of right. This leaves only the issue of whether the district court correctly denied Appellant's Motion for Intervention as untimely.

B.

This court has long recognized that "the requirement of timeliness is not a tool of retribution to punish the tardy would-be intervener, but rather a guard against prejudicing the

7

original parties by the failure to apply sooner." Espy, 18 F.3d at 1205. Consequently, absolute or chronological measures of timeliness should be ignored and an intervener's "timeliness . . . determined from all of the circumstances." Glickman, 256 F.3d at 375 (citing Edwards, 78 F.3d at 1000). "A court should ignore 'how far the litigation has progressed when intervention is sought[,] . . . the amount of time that may have elapsed since the institution of the action . . . [, and] the likelihood that intervention may interfere with the orderly judicial processes.'" Glickman, 256 F.3d 375 (citing Stallworth, 558 F.2d at 266.

Recognizing these considerations, this court has fashioned a four-factor test for determining whether a motion to intervene is timely. A court must consider:

> (1) how long the potential intervener knew or reasonably should have known of her stake in the case into which she seeks to intervene; (2) the prejudice, if any, the existing parties may suffer because the potential intervener failed to intervene when she knew or reasonably should have known of her stake in the case; (3) the prejudice, if any, the potential intervener may suffer if the court does not let her intervene; and (4) any unusual circumstances that weigh in favor of or against a finding of timeliness.

Glickman, 256 F.3d 376 (citing Stallworth, 558 F.2d at 266).

### 1.

The first factor considered in determining whether a Rule 24 motion is timely is how long the potential intervener knew or reasonably should have known of her stake in the case into which she seeks to intervene. This court has recognized that "the

8

timeliness clock runs either from the time the applicant knew or reasonably should have known of his [stake in the case into which he seeks to intervene] or from the time he became aware that his [stake] would no longer be protected by the existing parties to the lawsuit." Glickman, 256 F.3d at 376 (citing Edwards, 78 F.3d at 1000) (internal quotations and citations omitted).

Appellant maintains that its delay in intervening is excusable because it did not receive notice of the action until October 29, 2001, ten days after the deadline imposed by the district court. Furthermore, Appellant asserts that once it learned of the vessel's arrest, it moved as quickly as possible to intervene. Appellee attacks these claims on three fronts.

Appellee first directs our attention to cases interpreting Supplemental Admiralty and Maritime Claims Rule C(4). These cases stand for the proposition that "[t]he in rem process of the Admiralty Court is based upon the presumption that the fact of seizure of a vessel alone will result in prompt, actual notice to all interested parties, without the necessity of formal personal notice." Wong Shing v. M/V Mardina Trader, 564 F.2d 1183, 1187 (5th Cir. 1977). "This removes from an admiralty plaintiff the cumbersome burden of attempting to locate and notify all those in the world who have an interest in the vessel." Tamblyn v. River Bend Marine, Inc. 837 F.2d 447, 488 n.1 (11th Cir. 1988). Consequently, Appellee argues that it is irrelevant that Appellant did not receive a phone call informing them of this

9

action until October 29, 2001, because Appellant had actual notice of the arrest on July 19, 2001.

Secondly, Appellee attempts to discredit Appellant's contention that it was not aware of the published notification of the court-ordered auction sale in the Houston Chronicle, the Galveston County Daily News, the Journal of Commerce and Tradewinds. Appellee has provided us with a September 12, 2001, news article describing the arrest and pending sale of the vessel, published in the Las Vegas Sun. Appellee argues ultimately argues that "[i]f CDS did not see the court ordered publications, it should have had notice of the proceedings by virtue of [this] article circulated in a newspaper in its home city." Appellee's Brief at 10.

Lastly, Appellee argues that prudent business practices should have alerted Appellant of the vessel's arrest long before October 29, 2001, because Talisman had been delinquent on paying invoices due to Appellant for months.

Although Appellee's arguments are persuasive and do call into question whether Appellant "knew" or "reasonably should have known" of its interest in the vessel before October 29, 2001, they are outweighed by the other three factors in the "timeliness" equation.

2.

Notwithstanding Appellee's assertions suggesting that

10

Appellant acted in a dilatory manner in not asserting its claim before November 16, 2001, these facts are outweighed by the lack of prejudice the existing parties will suffer because of Appellant's intervention.  This court has determined the decisive element of this factor to be whether the "existing parties would . . . have suffered any less prejudice had [Appellant] filed its motion to intervene sooner."  Glickman, 256 F.3d at 378.

First, it is clear that Appellant's intervention in the sale proceedings will cause Appellees to experience increased costs and delays in attempting to solidify their rights.  However, these are consequences which would have resulted whether Appellant had moved for intervention two weeks after the district court's deadline or two weeks before.  "The likelihood that intervention may interfere with orderly judicial process . . . has nothing to do with timeliness."  Stallworth, 558 F.2d at 266.  "Prejudice must be measured by the delay in seeking intervention, not the inconvenience to the existing parties of allowing the intervener to participate in the litigation."  Espy, 18 F.3d at 1206.  As we have previously determined:

> Laches is much more than time.  It is time plus
> prejudicial harm, and the harm is not merely that one
> loses what he otherwise would have kept, but that delay
> has subjected him to a disadvantage in asserting and
> establishing his claimed right or defense . . . Nothing
> in the Answers of [claimants] remotely suggested that
> by the . . . delay . . . they were worse off in proving
> their own respective maritime liens or in disproving
> the validity and amount of Intervenor's claimed lien.

Point Landing, Inc. v. Alabama Dry Dock and Shipbuilding Co., 261

11

F.2d 861, 865-866 (5th Cir. 1958).

Appellee additionally argues that it will suffer prejudice if Appellant is allowed to intervene late because Appellee's bid at auction was based, in part, on its reliance on the district court's enforcement of the claims deadline. Appellee states that:

> the court's enforcement of the deadline assured [Appellee] that no further claims would be allowed and that it would be able to recover funds from its bid sufficient enough to offset the cost of repairing, maintaining and servicing the M/V Talisman. If allowed, CDS' late claim of $451,000, would virtually eliminate these available funds, and force [Appellee] to incur additional and unanticipated costs and expenses.

Appellee's Brief at 14. However, recently Appellee took the opposite position before us in its Verified Response to Motion for Partial Stay. In its response, Appellee conceded that even with Appellant's claim, there are more than enough funds in the court's registry to cover all claims.

> Assuming, *arguendo*, that CDS' claim is a maritime lien for domestically provided necessaries, the claim would increase the total of the Claims to, at most, $1,769,126.60. Thus even adding CDS' claim to the others, the $1.98 million in the court's registry is more than sufficient to cover all of these claims. At least $669,026 would remain in the court's registry after satisfying all current lien claimants, which is more than enough to satisfy CDS' potential claim of $451,000. There being enough funds to cover the Claims and CDS' claim, a stay is unnecessary.

Appellee's Verified Response to Motion for Partial Stay at 2.

The doctrine of judicial estoppel prevents a party from

asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding, or in a prior phase of the same proceeding. 18 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 134.30 (3d ed. 1999). Judicial estoppel is an equitable concept intended to prevent the perversion of the judicial process. Id. It is to be applied where "intentional self-contradiction is being used as a means of obtaining unfair advantage." Id. The Court has recently accepted the doctrine and described it as follows:

> Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.

New Hampshire v. Maine, 532 U.S. 742, ___, 121 S. Ct. 1808, 1814 (2001). It would seem as if the doctrine of judicial estoppel would apply to the case at bar. After all, Appellee's sudden "about-face" on whether there are funds sufficient to cover all claims is just the sort of conduct this doctrine is designed to prevent.

The fact that Appellee will suffer no prejudice by Appellant's late intervention outweighs any temporal delay considered under the first timeliness factor. When there is minimal prejudice, courts have routinely determined motions for intervention to be "timely" despite long interims between a deadline for intervention and an actual filing.

13

In <u>DnB Holdings, Limited v. M/V Hermitage</u>, 1995 WL 692954 (E.D. La. Nov. 21, 1995), the court determined an intervention based on a maritime lien to be timely despite an eight month delay between the time when the potential intervener knew of its stake and when the motion was filed. Interestingly, in <u>DnB Holdings</u>, the intervener received actual mailed notice of the action and not just notice by publication. In determining the motion for intervention to be timely the court stated:

> Though World Ship was seriously dilatory in asserting its claim against the res and no reason for that delay appears, the other parties to this action were not prejudiced by the delay and World Ship will be prejudiced if the intervention is not allowed. Balancing these factors, the motion of World Ship Supply Inc. to intervene and assert a claim in this matter is granted.

<u>DnB Holdings</u>, 1995 WL 692954 at *2.

3.

The third timeliness factor focuses on the prejudice the potential intervener would suffer if not allowed to intervene. This factor weighs heavily in favor of Appellants here. Courts have often found that liberality is required in allowance of interventions to assert claims against proceeds from the sale of a vessel.

> [This liberality] is a recognition of [the] unavoidable consequence of a sale of vessel in an in rem proceeding; the sale cuts off the right of all nonparties, and unless one claiming a lien is given the opportunity of asserting his right as against the proceeds resulting from the sale which has been made or is in the course of being carried out, the rights are

14

forever and irretrievably lost. Overstreet v. Water Vessel "Norkong", 538 F. Supp. 53, 55-56 (S.D. Miss. 1982) (citing Point Landing, 261 F.2d at 866).

Such is the situation in the present appeal. If not permitted to intervene, Appellant will be forever prohibited from making its in rem claim against the vessel and its sale proceeds. This permanent bar from enforcing its maritime lien was exactly the sort of prejudice envisioned by the Stallworth court in establishing this third factor.

Appellee counters by arguing that although Appellant "may lose its in rem action, [it still has] an in personam action against Talisman." Appellee's Brief at 15. This argument has been attempted before. Courts often recognize that even though an in personam claim will remain "[t]here is a strong presumption against the waiver of a maritime lien." Bolongon v. M/V Nor Atlantic, 2000 WL 222855 at *4 (E.D. La. Feb. 18, 2000).

### 4.

The fourth timeliness factor requires this court to consider any unusual circumstances that weigh in favor of or against a finding of timeliness. A careful review of the record indicates that this factor also weighs in favor of Appellant's intervention. Appellant has its principal place of business in Las Vegas, Nevada and did not receive notice that this action was pending in Galveston, Texas until ten days after the court-

imposed filing deadline.  Notice by publication was made in three separate periodicals. However, none of these has extensive circulation in the Nevada area.  Once Appellant received notice, it moved as expeditiously as possible to intervene in the suit. Appellant contacted counsel the same day it learned of the action and ultimately had a motion before the court within three weeks. Consequently, this final factor supports Appellant's motion for intervention.

*     *     *     *     *

The district court erred in denying Appellant's Rule 24 Motion for Intervention as untimely.  For the reasons stated above, the judgment of the district court is **reversed**.